

# IN THE COURT OF CRIMINAL APPEALS
# OF TEXAS

### NO. AP-76,141

### EX PARTE CARRIE DENISE LANE, Applicant

### ON APPLICATION FOR A WRIT OF HABEAS CORPUS
### FROM SMITH COUNTY

JOHNSON, J., delivered the opinion of the Court in which MEYERS, PRICE, WOMACK, HOLCOMB, and COCHRAN, JJ., joined. KELLER, P.J., and KEASLER and HERVEY, JJ., concurred.

### O P I N I O N

A jury convicted applicant of possession of a controlled substance, methamphetamine, in the amount of 200 grams or more, but less than 400 grams. The jury assessed a sentence of life imprisonment. On appeal, the Twelfth Court of Appeals affirmed applicant's conviction and sentence. Applicant now seeks habeas corpus relief.

Applicant alleges that her trial counsel provided constitutionally ineffective assistance of counsel at both the guilt and punishment stages of her trial. The trial court entered Findings of Fact and Suggested Conclusions of Law recommending that this Court deny relief. We filed and set applicant's habeas corpus application and now grant relief on grounds of ineffective assistance of

counsel at the punishment stage of trial.

**Ineffective Assistance of Counsel**

Before we may grant relief on a writ of habeas corpus for ineffective assistance of counsel, an applicant must demonstrate that: 1) trial counsel's performance fell below an objective standard of reasonableness; and 2) there is a reasonable probability, sufficient to undermine confidence in the outcome that, but for counsel's deficient performance, the result of the proceeding would have been different. *Strickland v. Washington*, 466 U.S. 668 (1984). This two-pronged test is "the benchmark for judging . . . whether counsel's conduct so undermined the proper functioning of the adversarial process that the trial cannot be relied on as having produced a just result." *Id*. at 686.

A reviewing court's scrutiny of counsel's performance is highly deferential and begins with the assumption that counsel's conduct fell within the wide range of reasonable professional assistance. *Strickland*, 466 U.S. at 689; *Thompson v. State*, 9 S.W.3d 808, 813 (Tex. Crim. App. 1999). An applicant may overcome this strong presumption by proving trial counsel's ineffectiveness by a preponderance of evidence. *Strickland*, 466 U.S. at 689; *Thompson*, 9 S.W.3d at 813.

In evaluating the effectiveness of counsel, the reviewing court looks at the totality of the representation and the particular circumstances of each case. *Ex parte Felton*, 815 S.W.2d 733, 735 (Tex. Crim. App. 1991); *Thompson*, 9 S.W.3d at 813. An applicant's failure to satisfy both prongs of the two-pronged test defeats a claim of ineffective assistance of counsel: if both prongs are not met, an appellate court cannot conclude that the conviction resulted from a breakdown in the adversarial process that renders the result unreliable. *Thompson*, 9 S.W.3d at 812-13.

**Facts**

On April 18, 2005, applicant and her co-defendant, Joseph Lopez, were stopped on Interstate 20 in Smith County for failing to signal before changing lanes. (Trial Record, 3 R.R. 41-42.) Applicant was the driver, and Lopez was the passenger. No other persons were inside the vehicle. *Id*. at 43. Department of Public Safety (DPS) Trooper Kenneth Richbourg smelled a strong odor of burnt marijuana coming from the vehicle. *Id*. at 67. Both applicant and Lopez denied that they were smoking marijuana. *Id*. at 71-72. During an initial search of the vehicle, Trooper Richbourg found two baggies of marijuana and two burnt marijuana cigarettes on and around the passenger-side front seat. *Id*. at 73-74. He also found 225.44 grams of crystal methamphetamine in a cup in the center console of the vehicle. *Id*. at 75. At that point, he arrested appellant and her passenger. *Id.* at 77.

Trooper Richbourg interviewed applicant on the way to Richbourg's office. Applicant stated that she and Lopez were dating and that she had gone to Dallas by herself the night before the stop; she did not join Lopez in Dallas until the morning of the stop. *Id*. at 81. However, Lopez told DPS Trooper Jim Burkett that he and applicant had stayed together the night before the stop. *Id*. at 190.

Applicant denied that the methamphetamine was hers. *Id*. at 82. She stated that she had lent her vehicle to someone the day before. *Id*. She would not say who that person was. *Id*. Lopez also denied ownership of the methamphetamine and said that he had seen two other persons driving applicant's vehicle the day before.

During a subsequent search of applicant's vehicle, Trooper Richbourg discovered a small scale like that often used to weigh narcotics, a loaded 9mm pistol, and a duffle bag containing a man's belongings and a knife. *Id*. at 97-98. He also discovered a cosmetics bag containing two

baggies of pills and two baggies of crystal methamphetamine. Two of the four baggies had applicant's first name written on them. *Id*. at 97-98.

### Ineffective assistance of counsel at the guilt stage

Applicant alleges that she was denied effective assistance of counsel at the guilt stage of trial because trial counsel failed to object to: 1) testimony that Lopez had made statements that incriminated applicant; 2) testimony regarding the extent of the methamphetamine problem, the manner in which methamphetamine is distributed in Texas, and the wholesale and retail prices of methamphetamine; and 3) the prosecutor's argument, outside the record, that applicant was bringing methamphetamine into Smith County to poison the children and turn them into addicts, and that children were in fact shooting up and smoking methamphetamine. (Applicant's Brief at 4-12.) To establish an ineffective assistance of counsel claim, an applicant must demonstrate that trial counsel's performance was both deficient and prejudicial. *Strickland*, 466 U.S. 668.

### Failure to object to testimony that Lopez made statements to officers that incriminated applicant

Trooper Richbourg testified without objection that Lopez said he did not know anything about the methamphetamine in the vehicle and that only the duffle bag belonged to him.[1] (Trial Record, 3 R.R. 135-37.) Both Trooper Burkett and DPS Sergeant Kenneth Bond testified without objection that Lopez had stated that he and applicant had stayed together the previous night. *Id*. at 190, 223.

Applicant argues that trial counsel should have objected to the testimony.[2] In support, she

---

[1] Applicant and Lopez were tried together.

[2] Applicant must show that it would have been error for the court to overrule an objection to the admissibility of the evidence. *Vaughn v. State*, 913 S.W.2d 564, 566 (Tex. Crim. App. 1996).

cites *Bruton v. United States*, 391 U.S. 123 (1968), which held that "a defendant is deprived of his rights under the Confrontation Clause when his co-defendant's incriminating confession is introduced at their joint trial." *Cruz v. New York*, 481 U.S. 186, 186 (citing *Bruton*, 391 U.S. 123). Applicant argues that the officers' testimony "inferentially incriminated applicant": Lopez's statement that he did not know anything about the methamphetamine and that only the duffle bag belonged to him implied that applicant was the owner of the 225.44 grams of methamphetamine found in the center console of the vehicle. (Applicant's Brief at 7-8.)

Applicant must "overcome the presumption that, under the circumstances, the challenged action 'might be considered sound trial strategy.'" *Strickland*, 466 U.S. at 689 (quoting *Michel v. Louisiana*, 350 U.S. 91, 101 (1955)). At the evidentiary hearing, trial counsel testified that his defensive theory was that his "client was not responsible for anything but the two baggies that had her name on it." (Habeas Hearing, 1 R.R. 82.) Lopez's statement was that he did not know anything about the methamphetamine and that he had seen two other persons driving applicant's car the day before her arrest. Although the jury could reasonably infer from Lopez's statement that applicant was the owner of the methamphetamine, the statement itself did not incriminate applicant; counsel's failure to object to the admission of the statement did not constitute deficient performance.

### Failure to object to an officer's testimony regarding the extent of the methamphetamine problem

Applicant asserts that trial counsel should have objected to Sergeant Bond's testimony regarding the extent of the methamphetamine problem. Texas Rule of Evidence 401 defines relevance as having any tendency to make the existence of any fact that is of consequence to the determination of the action more or less probable. TEX. R. EVID. 401. Even if the evidence were

relevant, it may still be excluded if the danger of unfair prejudice substantially outweighs its probative value. TEX. R. EVID. 403. Unfair prejudice means the tendency of the evidence "to prove some adverse fact not properly in issue or unfairly to excite emotions against the defendant." *Montgomery v. State*, 810 S.W.2d 372, 378 (Tex. Crim. App. 1991) (op. on reh'g).

Applicant was charged with possession of 225.44 grams of methamphetamine. To sustain a conviction for unlawful possession of a controlled substance, the state must prove that the accused exercised care, control, and management over the contraband and that the accused knew the matter was contraband. *Martin v. State*, 753 S.W.2d 384, 386 (Tex. Crim. App. 1988).

At the guilt phase of trial, Sergeant Bond testified that there is a methamphetamine epidemic in Texas. (Trial Record, 3 R.R. 213.) Evidence that there is a methamphetamine epidemic in Texas is not a factor linking applicant with, or bearing on, possession of the methamphetamine, but it does have the tendency "to prove some adverse fact not properly in issue or unfairly to excite emotions against the defendant." *Montgomery*, 810 S.W.2d at 378. Thus, trial counsel should have objected to testimony regarding the extent of the methamphetamine problem. Failure to do so was deficient performance.

### Failure to object to an officer's testimony regarding the manner in which methamphetamine is distributed in Texas, and the wholesale and retail prices of methamphetamine

Applicant contends that trial counsel should have objected to Sergeant Bond's testimony that: 1) methamphetamine comes primarily from Mexico; 2) Dallas is a major hub for distribution; 3) methamphetamine is typically transported by vehicle from Dallas to rural communities; and 4) Interstate 20 is one of the main drug corridors in east Texas. (Trial Record, 3 R.R. 213-14, 216.) She asserts that Sergeant Bond's testimony was admitted as evidence of an uncharged offense of

possession of a controlled substance with intent to deliver.

An accused may not be tried for a collateral crime or for being a criminal generally. *Wilkerson v. State*, 736 S.W.2d 656, 659 (Tex. Crim. App. 1987); *Albrecht v. State*, 486 S.W.2d 97, 100 (Tex. Crim. App. 1972); *Young v. State*, 261 S.W.2d 836, 837 (Tex. Crim. App. 1953). Evidence of an uncharged offense, however, may be admissible to show the context in which the criminal act occurred. *Wilkerson*, 736 S.W.2d at 659-60; *Albrecht*, 486 S.W.2d at 101. In addition, under Texas Rule of Evidence 404, evidence of other crimes, wrongs, or acts, may "be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake."

In *Hoffert v. State*, 623 S.W.2d 141, 144 (Tex. Crim. App. 1981), the defendant pled guilty before a jury to the delivery of methamphetamine. This Court held that the evidence of smoking marijuana and offers to sell additional marijuana and methamphetamine was properly admitted at trial to demonstrate the context of the charged offense. We further noted that "the jury has a right to hear what events immediately surrounded the criminal act charged so that they may realistically evaluate the evidence." *Hoffert*, 623 S.W.2d at 144 (citing *Albrecht*, 486 S.W.2d 97).

During an initial search of applicant's vehicle, Trooper Richbourg found 225.44 grams of crystal methamphetamine in the center console. Then, during a subsequent search of applicant's vehicle, Trooper Richbourg discovered a small scale, a loaded 9mm pistol, and a cosmetics bag containing two baggies of pills and two baggies of crystal methamphetamine. (Trial Record, 3 R.R. 97-98.) Two baggies had applicant's first name written on them, and one baggie had "Ryan" written on it. *Id*. at 98.

Here, the evidence of possession of drugs with intent to deliver is inextricably intertwined

with the evidence used to prove the offense of possession of methamphetamine. Sergeant Bond's testimony offered evidence about the context of the charged offense of methamphetamine possession and was relevant and thus admissible. However, applicant asserts that, even if relevant, the evidence was unduly prejudicial and that the introduction of Sergeant Bond's testimony regarding possession with intent to deliver placed applicant at risk of being convicted on the basis of that offense.

When weighing considerations of unfair prejudice against the probative value of the evidence, such considerations do not prevail. This Court has held in the past that "[r]arely will the prejudicial value render inadmissible any evidence that is context of the offense." *Mann v. State*, 718 S.W.2d 741 (Tex. Crim. App. 1986). In the instant case, evidence of the uncharged offense provided the context for the charged offense and was relevant to determining applicant's guilt of the charged offense. The prejudicial effect of the evidence in tending to confuse the issues before the jury is outweighed by its probative value. Thus, trial counsel's performance was not deficient in failing to object to testimony regarding the manner in which methamphetamine is distributed in Texas.

Sergeant Bond also testified that a half pound of methamphetamine costs $6,000 to $9,000 and can be sold retail for triple that amount. (Trial Record, 3 R.R. 219.) Applicant argues that this evidence is irrelevant and unduly prejudicial. However, in *Kemner v. State*, 589 S.W.2d 403, 406 (Tex. Crim. App. 1979) and *Castro v. State*, 432 S.W.2d 948 (Tex. Crim. App. 1968), both possession of marijuana cases, this court held that it is not error to admit evidence regarding the value of narcotics.

Applicant cites *Cabrales v. State*, 932 S.W.2d 653, 658 (Tex. App.—Houston [14th Dist.] 1996, no pet.) for the proposition that testimony regarding the street value of an illegal drug  is

irrelevant to whether defendant intentionally or knowingly possessed it. However, *Cabrales* is distinguishable from the instant case. In *Cabrales*, the defendant was indicted for possession of powdered cocaine. A police officer testified, however, to the value of crack cocaine, which the court held was irrelevant in defendant's case.

In this case, applicant was indicted for possession of 225.44 grams of methamphetamine, which is approximately a half pound. Sergeant Bond testified as to the value of that methamphetamine. Any risk that this evidence might confuse the issues before the jury was outweighed by its helpfulness in translating the testimony into terms that were easily comprehended by the jury. *Kemner*, 589 S.W.2d at 404. Thus, trial counsel's performance was not deficient in failing to object to testimony regarding the wholesale and retail prices of methamphetamine.

**Failure to object to the prosecutor's argument, outside the record,
that applicant was bringing methamphetamine into Smith County
to poison the children and turn them into addicts, and that
children were in fact shooting up and smoking methamphetamine**

The record reflects that a prosecutor argued in closing in the guilt phase that "[p]eople are bringing [methamphetamine] through our county to its destination: Our kids and our family members, so it will poison them and turn them into addicts. . . . They are drug dealers. How dare you bring this into our county." (Trial Record, 4 R.R. 97.) She also expressed her opinion that 225 grams is not a user amount. "That is for resale. That is to poison other people. . . . They are drug dealers. And shame on you for bringing this in our freaking county. Shame on you." (Trial Record, 4 R.R. 96.)[3] Applicant asserts that "people" was meant to be understood as "the defendant" and that

---

[3] A prosecutor argued during summation that "[methamphetamine] is the poison that is infiltrating our society and our county. And it is deadly . . . . Bringing it here, poisoning our kids, and addicting them to that stuff, that poison, those crystals. 225 [buyers]. At a very minimum, . . . it is ruining that many lives." (Trial Record, 4 R.R. 88.) *Id.* at 96-97. And she then concluded, "That's poisonous . . . . You get somebody hooked, they're a repeat customer.

the "shame on you" and "how dare you" remarks were aimed at her specifically. Applicant argues that trial counsel's performance was deficient when he failed to object to this argument on the basis of irrelevance and undue prejudice.

Proper jury argument generally will fall within one of four categories: 1) summary of evidence; 2) reasonable deduction from the evidence; 3) response to argument of opposing counsel; and 4) plea for law enforcement. *Borjan v. State*, 787 S.W.2d 53, 55 (Tex. Crim. App. 1990). The prosecutor's argument does not fall into any of these categories. Instead, the prosecutor's argument referred to facts that were neither in evidence nor inferable from the evidence and made an improper plea for law enforcement.

Evidence of possession with intent to deliver was admissible for the purpose of showing the context of the charged offense. *Id.* at 57. In summation, however, the prosecutor went beyond making reasonable deductions from the admitted evidence. The prosecutor referred to a wholly new and unsubstantiated allegation that "people" sell methamphetamine to children, who in turn use the methamphetamine and become addicts. "[A] prosecutor may not use closing argument to get evidence before the jury which is outside the record and prejudicial to the accused." *Id.* This court has held that improper references to facts that are neither in evidence nor inferable from the evidence are "designed to arouse the passion and prejudices of the jury and as such are highly inappropriate." *Id.* Moreover, the prosecutor attempted to persuade the jury to convict applicant based on an uncharged offense for which applicant was not on trial. This court has held that "[t]he law provides for, and presumes, a fair trial, free from improper argument by the prosecuting attorney." *Long v. State,* 823 S.W.2d 259, 267 (Tex. Crim. App. 1991)(applying *Borjan* to argument at guilt phase).

---

That's easy money right there." *Id*. at 100.

The prosecutor's argument during summation was improper. No sound strategy could justify trial counsel's failure to object to the prosecutor's argument. Thus, trial counsel's performance was deficient in failing to object to the prosecutor's argument.

## Prejudice

Applicant has demonstrated that trial counsel was deficient for failing to object to: 1) an officer's testimony regarding the extent of the methamphetamine problem; and 2) the prosecutor's argument, that "people" were bringing methamphetamine into Smith County to poison the children and turn them into addicts and that children were in fact shooting up and smoking methamphetamine. However, in addition to demonstrating that trial counsel's representation fell below an objective standard of reasonableness, to establish a claim of ineffective assistance of counsel applicant must also show that she was prejudiced as a result of the deficient performance of the attorney. *Strickland*, 466 U.S. at 688; *Hernandez v. State*, 988 S.W.2d 770, 772 (Tex. Crim. App. 1999). The reviewing court must judge the claim based on the totality of the representation. *Strickland*, 466 U.S. at 695. Here, applicant's claim of ineffective assistance of counsel fails because applicant is unable to show that there is a reasonable probability, sufficient to undermine confidence in the outcome that, but for counsel's deficient performance, the result of the trial would have been different. *See generally id*.

The evidence that was presented at the guilt stage of trial was strong. Applicant and Lopez were the only persons inside applicant's vehicle when it was stopped in Smith County while they were traveling from Dallas, a major hub for drug distribution, on Interstate 20, one of the main drug corridors in east Texas. During the initial search of applicant's vehicle, Trooper Richbourg found 225.44 grams of crystal methamphetamine in a cup in the center console. During a subsequent

search of applicant's vehicle, law-enforcement personnel discovered a small scale, two baggies of drugs with applicant's first name written on them, and a loaded 9mm pistol. Applicant's explanation for the methamphetamine was that some other person had been driving applicant's vehicle earlier that day. No further evidence was developed as to the existence or the identity of the other person.

Further, when Trooper Richbourg stopped applicant, he smelled marijuana smoke coming from her vehicle. During the initial search of the vehicle, Trooper Richbourg found two baggies of marijuana and two burnt marijuana cigarettes on and around the passenger-side front seat. Applicant denied that she had been smoking marijuana.[4] (Trial record, 3 R.R. 72.)

Applicant has failed to show that, but for trial counsel's deficient performance, the outcome at the guilt stage would have been any different. Applicant's claim of ineffective assistance of counsel at the guilt stage must therefore fail.

### Ineffective assistance of counsel at the punishment stage of trial

Applicant alleges that she was also denied effective assistance of counsel at the punishment stage of trial. She argues that trial counsel's performance was deficient for failing to object to DEA Agent Joseph Downing's testimony regarding the societal problems caused by methamphetamine. Applicant also urges that trial counsel's performance was deficient for failing to request pre-trial notice of the state's experts, determine that a DEA agent would testify about methamphetamine addiction, properly object to his testimony about addiction and that 45,000 people could get high from the methamphetamine that applicant possessed, and call an expert in rebuttal. Furthermore, applicant alleges that trial counsel's performance was deficient when he failed to object to a prosecutor's argument to the jury that it should consider the application of parole law to applicant.

---

[4] Applicant later claimed the marijuana. (Trial record, 3 R.R. 78.)

**Failure to object to the DEA agent's testimony regarding
the societal problems caused by methamphetamine**

Applicant specifically alleges that Agent Downing testified that he had investigated a methamphetamine lab in Dallas where two people died from poisonous gas, he was familiar with a woman who used methamphetamine during her pregnancy, and that the community has to subsidize the costs of health care, clean up, and theft associated with methamphetamine use because a user typically loses his job, runs out of money, and then steals to get money to buy drugs. (Applicant's Brief at 19.) Applicant argues that trial counsel's failure to object constituted deficient performance because the testimony was not relevant, was unduly prejudicial, and referred to extraneous offenses that were not connected to applicant. In support of her allegations, she cites two cases: 1) *Ewes v. State*, 841 S.W.2d 16, 18 (Tex. App.—Dallas 1992, pet. ref'd); and 2) *Contreras v. State*, 846 S.W.2d 48 (Tex. App.—Corpus Christi 1992, pet. ref'd).

During the punishment stage in *Ewes*, a drug-delivery trial, the trial court admitted the testimony of a police officer about the number of drug-related homicides in the county. The defendant argued that such evidence encouraged the jury to punish him for offenses for which he was not on trial and in which he did not participate. The Fifth Court of Appeals held that the trial court erred in admitting this testimony because it was unduly prejudicial and "its admission tended to confuse the punishment issues before the jury." *Ewes*, 842 S.W.2d at 18.

In *Contreras*, a drug-possession case, the trial court admitted the opinion testimony of a deputy sheriff as to what a hypothetical drug dealer would do with an ounce of cocaine. The deputy sheriff testified that persons with an ounce of cocaine were generally involved with the sale and distribution of cocaine. *Contreras*, 846 S.W.2d at 49. The Thirteenth Court of Appeals found that

the state was attempting to link the defendant's crime with that of cocaine importers. It held that the trial court erred in admitting this testimony because it was irrelevant to the punishment that the defendant should receive for possession of cocaine. *Id*. at 50.

Article 37.07, § 3(a), of the Texas Code of Criminal Procedure is "one of the guiding principles for the admissibility of evidence at the punishment stage of trial." *Sunbury v. State*, 88 S.W.3d 229, 233 (Tex. Crim. App. 2002) (citing *Rogers v. State*, 991 S.W.2d 263, 265 (Tex. Crim. App. 1999)). Pursuant to Article 37.07, § 3(a)(1), "evidence may be offered by the State and the defendant as to any matter the court deems relevant to sentencing." TEX. CODE CRIM. PROC. art. 37.07, § 3(a)(1).

Rule 401 is helpful for determining what evidence should be admitted under Article 37.07, § 3(a), but it is not a perfect fit in the punishment context. *Sunbury*, 88 S.W.3d at 234. Determining what is relevant at the punishment stage is a question of "what is helpful to the jury in determining the appropriate sentence for a particular defendant in a particular case." *Rogers*, 991 S.W.2d at 265. Evidence that is relevant to the determination of a sentence may still be excluded if the danger of unfair prejudice substantially outweighs its probative value. TEX. R. EVID. 403. Rule 403 favors the admission of relevant evidence, presuming that relevant evidence will be more probative than prejudicial. *Montgomery v. State*, 810 S.W.2d 372, 389 (Tex. Crim. App. 1991) (op. on reh'g).

Applicant argues that *Ewes* and *Contreras* should be interpreted to hold that it is error for a trial court to admit testimony regarding the dangers and societal costs related to drug use at the punishment stage of a trial for possession or delivery of controlled substances. We decline to accept this interpretation of *Ewes* and *Contreras*. First, the courts in *Ewes* and *Contreras* relied on a purely factual analysis in determining the relevance of the evidence. Second, applicant's interpretation of

*Ewes* and *Contreras* is too broad. Determining what is relevant should be specific to a particular defendant in a particular case. *Sunbury*, 88 S.W.3d at 234. In the present case, the trial court ruled that the testimony regarding the societal problems caused by methamphetamine addiction that was given in the punishment stage of trial was relevant and admissible. That court cited TEX. CODE CRIM. PROC. art. 37.07, § 3(a)(1) for support.

Agent Downing's testimony about the dangers of drug use went well beyond demonstrating the context of applicant's offense. His testimony attempted to connect applicant to offenses to which there appear to be no connection. At trial, evidence was presented that implied that applicant was involved in the sale and delivery of drugs.[5] It is not apparent, however, that testimony from witnesses, other than Agent Downing, established or even suggested that applicant engaged in manufacturing drugs or fed the addiction of a pregnant woman. Those unconnected cases were not "helpful to the jury in determining the appropriate sentence" for applicant. *Rogers*, 991 S.W.2d at 265.

The testimony on the societal problems caused by drug use also went well beyond demonstrating the context of the instant offense. It is conceivable that testimony on community subsidization of the costs of health care, clean up, and theft associated with methamphetamine use could be helpful to a jury in determining an appropriate sentence. It provides context for why possession of a controlled substance is prohibited. However, in this case, it appears that no facts were elicited to substantiate the claims in Agent Downing's testimony. He merely made broad generalizations about the impact of drugs on society as a whole, not the geographical area in which

---

[5] During a search of applicant's vehicle, investigators recovered a small black scale, a cosmetic bag containing two baggies each of pills and crystal methamphetamine, and a loaded 9mm pistol in a gun case. (Trial Record, 3 R.R. 97-98.) Lopez was carrying over $1000 cash in his pocket at the time of the arrest. *Id*. at 129.

he works or in which applicant was alleged to have possessed a controlled substance. We conclude that the testimony was irrelevant.

Even if the evidence were relevant, we believe that considerations of substantially unfair prejudice would have sufficed to bar the admission of the testimony regarding the general dangers and societal costs related to drug use. Any probative value that the testimony may have had with respect to determining the appropriate length of applicant's sentence was substantially outweighed by the danger that it would give rise to substantially unfair prejudice. "Unfair prejudice" refers to an "undue tendency to suggest decision on an improper basis, commonly, though not necessarily, an emotional one." *Cohn v. State*, 849 S.W.2d 817, 820 (Tex. Crim. App. 1993). Agent Downing's testimony implied a link between applicant's offense of possession of methamphetamine with the unconnected offenses of the manufacture of drugs, delivery of drugs to a pregnant woman, and theft. The testimony was inflammatory and tended to confuse the issues before the jury. The testimony, more likely than not, encouraged the jury to consider irrelevant evidence when assessing the sentence and gave rise to a risk that the jury would punish applicant for matters that were not reasonably related to the sentencing determination before it.

Agent Downing's testimony on the general dangers and societal costs caused by methamphetamine was irrelevant and unduly prejudicial. We can find no objectively reasonable basis in this case for trial counsel's failure to object to this testimony. Thus, we find that trial counsel's performance in failing to object to Agent Downing's testimony regarding the dangers and societal costs caused by methamphetamine constituted deficient performance.

**Failure to request pre-trial notice of the State's experts, determine that a DEA agent would testify about methamphetamine addiction, properly object to his testimony about addiction and**

**that 45,000 people could get high from the methamphetamine
that applicant possessed, and call an expert in rebuttal**

Applicant argues that trial counsel's performance was deficient when he failed to request pre-trial notice of the State's experts,[6] determine that a DEA agent would testify about methamphetamine addiction, properly object to his testimony about addiction and that 45,000 people could get high from the methamphetamine that applicant possessed, and call an expert in rebuttal.   Whether trial counsel's performance was deficient largely depends on whether Agent Downing's testimony was, in fact, objectionable.

**Failure to properly object to a DEA agent's testimony about addiction**

Agent Downing testified without objection that methamphetamine is one of the two most addictive drugs and that he has known only one person who recovered from methamphetamine addiction.  Applicant argues that trial counsel should have objected on the grounds that research does not support the assertion that methamphetamine is one of the two most addictive drugs,[7] and that

---

[6]  Pursuant to Article 39.14(b) of the Code of Criminal Procedure, "[o]n motion of a party and on notice to the other parties, the court in which an action is pending may order one or more of the other parties to disclose to the party making the motion the name and address of each person the other party may use at trial to present evidence under Rules 702, 703, and 705, Texas Rules of Evidence." TEX. CODE CRIM. PROC. art. 39.14 (b).

[7]  Whether methamphetamine is one of the two most addictive drugs depends on who is consulted.  The general consensus is that a legal drug, nicotine, heads the list, based on likelihood of addiction (96.5%) and difficulty of withdrawal.  *See, e.g.,* Rob Crane, MD, *The Most Addictive Drug, the Most Deadly Substance: Smoking Cessation Tactics for the Busy Clinician*, 34 PRIMARY CARE: CLINICS IN OFF. PRAC., 117-35 (March 2007). The next two highly addictive drugs are illegal: crack cocaine (95.5%) and "ice" (92.5%), the form of methamphetamine that is smoked. They are variously listed as the second or third most addictive drugs.  They are followed by crystal meth (89.5%), the injected form of methamphetamine, as the fourth most addictive drug.  See, e.g., John Hastings, *Relative Addictiveness of Various Substances*, IN HEALTH, Nov/Dec 1990 ("To rank today's commonly used drugs by their addictiveness, we asked experts to consider two questions: How easy is it to get hooked on these substances and how hard is it to stop using them? Although a person's vulnerability to drug also depends on individual traits -- physiology, psychology, and social and economic pressures–these rankings reflect only the addictive potential inherent in the drug. The numbers below are relative rankings, based on the experts' scores for each substance [+/- 1%]: 100 Nicotine[,]  99 Ice, Glass (Methamphetamine smoked)[,]  98 Crack[,]  93 Crystal Meth (Methamphetamine injected)[,]  85 Valium (Diazepam) . . . ."). *See also* http://www.druglibrary.org/schaffer/Misc/addictiv.htm (last visited Dec. 9, 2009)(same); Blurtit, *What Are the Most Addictive Drugs?,* http://www.blurtit.com/q3150977.html (last visited Dec. 9, 2009)(nicotine, crack, ice/glass, crystal methamphetamine, oxycodone).

Agent Downing's testimony that he has seen only one person recover from methamphetamine addiction is misleading. (Applicant's Brief at 19.) Applicant also argues that trial counsel should have objected on the grounds that Agent Downing is not qualified to testify to these opinions. *Id.* As support, applicant cites to Texas Rule of Evidence 702 and an affidavit from Dr. Ashraf Mozayani, a board-certified forensic toxicologist.

In Dr. Mozayani's affidavit, she stated that: 1) a narcotics agent is not qualified to testify that methamphetamine is one of the two most addictive drugs; 2) research does not support the assertion that methamphetamine is one of the two most addictive drugs; and 3) Agent Downing's testimony that he has only seen one person recover from methamphetamine addiction is misleading because a narcotics agent does not generally interact with methamphetamine addicts long enough to accurately determine their rate of recovery. (Mozayani's Affidavit at 3.) The trial court, in its Findings of Fact and Suggested Conclusions of Law, found that the affidavit is not relevant to any issue at trial. (Findings of Fact and Suggested Conclusions of Law at 8.) However, we find that the affidavit effectively calls into question the admissibility of Agent Downing's testimony about addiction.

Pursuant to Texas Rule of Evidence 702, "if scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education may testify thereto in the form of an opinion or otherwise." TEX. R. EVID. 702. Rule 702 requires that: 1) the witness is qualified; 2) the proposed testimony is scientific, technical, or other specialized knowledge; and 3) the testimony assists the trier of fact to understand the evidence or to determine

a fact in issue. *E.I. du Pont de Nemours and Co., Inc v. Robinson*, 923 S.W.2d 549, 556 (Tex. 1995). To establish requirements two and three, the proponent of the proposed testimony must establish that it is relevant and reliable. *E.I. du Pont de Nemours and Co.,Inc.*, 923 S.W.2d at 556.

Agent Downing's testimony that methamphetamine is one of the two most addictive drugs was based solely on his personal observations as a DEA agent;[8] he offered no other basis, such as an authoritative treatise, for his belief. Agent Downing's deductions did not logically flow from the observations on which he based them. Therefore, Agent Downing's testimony was objectionable, and trial counsel's performance was deficient when he failed to object.

Agent Downing also testified that he had known only one person who recovered from methamphetamine addiction. *Id*. at 58-59. At the time of trial, Agent Downing had four years of experience as a DEA agent. (Trial Record, 5 R.R. 21-22.) He was asked, "How many times have you seen where somebody was involved and addicted to methamphetamine turn their life around?" (Trial Record, 5 R.R. 58-59.) He responded, "I know of one person that I've ever been involved with." *Id*. at 59. The prosecutor followed up and asked, "That's out of all the investigations and out of all the people you've dealt with?" Agent Downing answered, "Correct." *Id*. at 59.

Agent Downing's statement that he's been involved with only one person who had turned their life around was misleading. His anecdotal statement was based solely on his limited personal observations as a DEA agent.[9] However, there is no evidence that he kept track of the methamphetamine users that he had contact with in his job. Without testimony that Agent Downing

---

[8] "I've got experience that tells me that some of the people that I've seen, some of the things I've witnessed, it's got to be addictive because, otherwise, they wouldn't put their children in harm's way." (Trial Record, 5 R.R. 40.)

[9] Agent Downing had 17 weeks of training at the DEA academy, and four years of experience as a DEA agent. (Trial Record, 5 R.R. 21-22.)

diligently kept track of each user he came into contact with and knew how each one fared, such a statement is meaningless and akin to a statement such as "All Indians walk single file. At least the one I saw did." Anecdotal information of this particular type is not helpful to a jury in assessing an appropriate punishment and is thus irrelevant. Agent Downing's testimony that he has known only one person who recovered from methamphetamine addiction and that methamphetamine is one of the most addictive drugs was objectionable. Thus, trial counsel's performance was deficient for failing to object to that testimony.

### Failure to properly object to a DEA's testimony that 45,000 people could get high from the methamphetamine that Applicant possessed

Agent Downing testified without objection that the dosage unit of methamphetamine for the purpose of getting high is five milligrams and that 45,000 people could get high from the 225.44 grams of methamphetamine that applicant possessed. Applicant argues that Agent Downing was not qualified to testify to these opinions. (Applicant's Brief at 19.)

In support of her allegations, applicant first notes the inaccuracy of Agent Downing's testimony. She cites Dr. Mozayani's affidavit for the proposition that Agent Downing's testimony that a five- milligram dosage will get a person "high" is incorrect. The amount of methamphetamine that a person must ingest to get high depends on his tolerance level. An infrequent user of methamphetamine requires dosages of 25 to 50 milligrams to get high, and a frequent user requires dosages of up to 1,000 milligrams to get "high." (Mozayani's Affidavit at 3.) Accordingly, Dr. Mozayani stated that testimony that 225 grams of methamphetamine will get 45,000 users high is incorrect. Instead, 225 grams of methamphetamine would get 4,500 to 9,000 infrequent users or 225 frequent users high. *Id*.

Although Dr. Mozayani's expert opinion is open to challenge, it is at least founded on scientific data and personal, specialized knowledge in forensic toxicology. Agent Downing was not shown to have knowledge of, experience with, or training in the amount of a drug required to get high. That is not to say that no law-enforcement officer can testify to such matters. An undercover officer who had made buys and consorted with drug users and dealers might well have the experience and knowledge to testify about how much of a drug must be ingested in order to get high, but Agent Downing was not shown to have such knowledge or any other factual basis for his opinion about dosages.

Applicant also cites Rule 702 to support her contention that Agent Downing was not qualified to testify that 225 grams of methamphetamine will get 45,000 people high. The trial court found that Agent Downing's testimony was admissible because it was factually based on his experience and training. (Findings of Fact and Suggested Conclusions of Law at 8.) However, we find that this finding is not supported by the record. Agent Downing merely stated scientific conclusions without citing any basis for them except his limited personal experience and training.[10]

Agent Downing's testimony that 45,000 people could get high with 225 grams of methamphetamine was inaccurate and misleading and therefore objectionable. In addition, his testimony about addiction was objectionable. Thus, trial counsel's performance was not only deficient for failing to object to this testimony, but also for failing to request pre-trial notice of the

---

[10] Agent Downing testified that:

A dosage unit is the amount of substance, in this case, methamphetamine, that it requires to produce an effect or a high in the average person, like you and I, not someone that has been using methamphetamine for a while. So just the typical person, this is the amount that it's going to take to get you high...[The dosage unit for methamphetamine is] five milligrams . . .. If you take 225 grams and divide it by 5 milligrams, that's going to be around 45,000 dosage units, which would be 45,000 people, like you and I, it would get high. (Trial Record, 5 R.R. 52-53.)

state's experts, and to call an expert to rebut Agent Downing's inaccurate testimony.

**Failure to object to a prosecutor's argument to the jury that
it should consider the application of parole law to applicant**

Applicant alleges that a prosecutor argued without objection that the jury should assess life imprisonment, with the caveat that applicant could earn good-conduct time and the right to parole.[11] (Trial Record, 5 R.R. 187-88.) She also alleges that another prosecutor asked the jury to assess life imprisonment, reiterating that "[l]ife does not necessarily mean life," because the length of the sentence could be reduced by awarding parole based on her conduct while incarcerated. *Id*. at 215-16. Applicant argues that trial counsel's performance was deficient for failing to object to the prosecutor's argument to the jury that it consider the application of parole law to applicant.

Article 37.07, §4, of the Code of Criminal Procedure prohibits the jury from considering how the parole law may apply to the defendant. Applicant argues that a prosecutor's argument that the defendant may be released on parole requires a new trial on punishment. In support, applicant cites to *Chester v. State*, 167 S.W.3d 935, 937 (Tex. App.–Amarillo 2005, pet. ref'd), which held that it is error for the prosecutor, during closing argument in the punishment stage of a trial, to tell the jury about how parole law might affect the amount of time the defendant would serve.

Applicant's reliance on *Chester* is misplaced. In *Chester*, the prosecutor stated that "[i]f there is a 20 year sentence, Mr. Chester will not become eligible for parole until his actual time

---

[11] The prosecutor argued:

> I said we're going to ask you to do something hard. We're going to ask you to sentence them to life. Now, understand, as the judge's instructions just explained to you, life doesn't necessarily mean life. Both of these defendants will have the opportunity, while they are incarcerated, to earn good conduct time and the right to parole. You have no say in that. That, quite frankly, will be up to them. Whether or not they make the decision, at that point in their life, to earn it, to prove they deserve it; because they certainly haven't proven they deserve it yet. They'll have that opportunity. It will not be denied them. (Trial Record, 5 R.R. 187-88.)

served, plus whatever credit they give him for good time served, equals 5 years, okay. That's what you know for sure." The facts of the present case, however, are significantly different.

In this case, the prosecutors merely stated the law and how it could affect applicant. In *Hawkins v. State*, 135 S.W.3d 72, 84 (Tex. Crim. App. 2004), the court held that it was neither improper for the prosecutor to accurately restate the law given in the jury charge nor was it improper for the prosecutor to ask the jury to take the existence of that law into account when assessing punishment. Thus, trial counsel's performance was not deficient for failing to object to the prosecutors' argument.

## Prejudice

Applicant contends that the facts of this case did not merit a life sentence. She argues that the only evidence that the state offered at the punishment stage, other than Agent Downing's testimony, was that applicant "successfully completed a one-year probation for possession of less than two ounces of marijuana and a two-year probation for DWI." (Applicant's Brief at 22.) These cases were dismissed in 2000 and 2001. *Id.*

The trial court disagreed with applicant. It found that the evidence against applicant in this case was overwhelming. (Findings of Fact and Suggested Conclusions of Law at 10.) It also found that applicant failed to offer any facts or legal authority to show that applicant did not receive effective assistance of counsel. *Id.*

We have already determined that the trial counsel's failure, at the punishment stage, to object to Agent Downing's testimony on the dangers and societal costs caused by methamphetamine constituted deficient performance. We have also determined that trial counsel's performance was deficient because he failed to request pre-trial notice of the state's experts, determine that a DEA

agent would testify about methamphetamine addiction, properly object to the agent's testimony about addiction and the number of people who could get high from the methamphetamine that applicant possessed, and call an expert in rebuttal. Moreover, we have determined that, during the guilt stage of trial, trial counsel's performance was deficient because he failed to object to testimony regarding the extent of the methamphetamine problem and a prosecutor's argument that applicant was bringing methamphetamine into Smith County to poison children and turn them into addicts and that children were, in fact, shooting up and smoking methamphetamine.

During the punishment stage of trial, the prosecutors asked for a life sentence, relying heavily on the objectionable testimony that was introduced during both phases of trial. During summation, a prosecutor argued that methamphetamine leaves destruction and devastation in everybody's path as it affects families, jobs, and children, making or ingesting it may kill, and users cannot hold jobs and have to commit crimes to support their habits. (Trial Record, 5 R.R. 204, 208.) Further, a prosecutor argued "[t]hat [the] amount they had would get 45,000 people . . .. [If] you line them up, it would take you all the way from downtown Tyler to Bullard . . . affecting their families, . . . their jobs, . . .[and] their children because they can't let go." *Id*. at 204.

Applicant received a life sentence, the maximum sentence available for her offense. We find that applicant has shown that there is a reasonable probability–one sufficient to undermine confidence in the result–that the outcome at the punishment stage would have been different but for her counsel's deficient performance.

We grant relief and remand the cause to the trial court for a new punishment hearing.

Delivered: December 16, 2009
Publish