

# NUMBER 13-17-00239CR

# COURT OF APPEALS

# THIRTEENTH DISTRICT OF TEXAS

# CORPUS CHRISTI - EDINBURG

| | |
|---|---|
| **DOMINGO PEREZ III,** | **Appellant,** |

**v.**

| | |
|---|---|
| **THE STATE OF TEXAS,** | **Appellee.** |

### On appeal from the 36th District Court
### of San Patricio County, Texas.

# MEMORANDUM OPINION

### Before Justices Contreras, Longoria, and Hinojosa
### Memorandum Opinion by Justice Hinojosa

Appellant Domingo Perez III appeals from a judgment convicting him of burglary of a habitation, a first-degree felony, and sentencing him to forty-five years' confinement. *See* TEX. PENAL CODE ANN. § 30.02(a)(3) (West, Westlaw through 2017 1st C.S.). In one issue, Perez contends his trial counsel provided ineffective assistance. We affirm.

# I. BACKGROUND

The indictment in this case alleges that on May 14, 2009, Perez entered the home of Odilia Herrera without her effective consent and assaulted her.  *See id.*  At trial, the State called only three witnesses:   Herrera, the complainant; Priscilla Torres, who lived across the street from Herrera; and Erica Gomez, the City of Taft police officer who first encountered Herrera after her altercation with an intruder.

Herrera testified that on May 14, 2009, she was in her home, had fallen asleep, and was suddenly awoken by a "searing pain" to her head.   She then realized that an assailant was hitting her head with a metal pot she had left on the kitchen table.   Herrera fended off her attacker by kicking and hitting him.   When the police arrived, Herrera was "in and out" of consciousness and "in shock," and all she conveyed to the police was that her attacker was "a tall skinny guy."   Herrera was airlifted to a hospital and received treatment in the intensive care unit.   Two weeks after being released from the hospital, Herrera met with the police, and she identified Perez out of a photographic line up of six male individuals.

Torres recalled that Perez lived in the neighborhood and befriended her boyfriend. During the State's direct examination of Torres, it asked and she answered:

Q.      Going back to May 14th, 2009, can you describe for the jury what if anything unusual happened that evening?

A.      That night I was in the shower.   I don't remember the time but it was nighttime.   My two boys, [John Doe 1] and [John Doe 2], my oldest was asleep on the couch. [John Doe 2] was sitting below him watching TV.   I heard some banging and I thought it was my boys fighting but my oldest had been asleep so I yelled from the shower *[John Doe 2], [John Doe 1], what are y'all doing?*   I didn't hear anything else after that but I heard a loud commotion so I got

2

dressed, I went outside and I started to comb my hair—that's the way I do it is I go outside and I comb my hair—and when I was outside I heard screaming. I don't know where it came from because it was nighttime. I didn't know who it was until a few minutes later I saw that the cops were down the street at [Herrera's] house and the next morning when I had saw my door frame was cracked and like two or three days before that I had put a chain on the door just for my little boy to put it because we lived on a busy street and I asked him, I said Oh my God—I told my boys—look what happened, there's a crack on the door because everything was renovated brand new in the house and he said Mom it was Flaco. That's his nickname, Domingo's nickname, and he said that he was trying to bang on the door to go in the house and, you know, I freaked out because he was six at the time and he knew him by his name and nickname and he had told me that he tried breaking in the house going in and he wanted him to open the door but of course my son couldn't reach to unlock it and he probably would have because he knew who he was. So for that chain I just thank God I had put it up a couple days before. It didn't let him go in my house otherwise I know he would have done something to my boys and myself.

Torres clarified that the knocking at her door occurred minutes before she heard the screaming.

On cross-examination by Perez's counsel, Torres testified her son who interacted with Perez on May 14, 2009, was twelve years old at the time of trial. Torres acknowledged discussing with her son the possibility of testifying in court, and she emphasized that she never told him what to say. Perez's counsel and Torres then discussed:

Q.  Was it common for you to see Domingo walking around the neighborhood?

A.  I guess, yes. At that time I heard he was really bad on drugs.

Q.  Well, if he was bad on drugs or not, you hadn't heard that and you don't know that for sure, do you?

A.  Well, I mean it's a small town. You know when somebody is on

3

something.

Q. Well, it is a small town. In fact, houses are really close together, correct?

A. Yes.

. . .

Q. Ma'am, can you tell this jury one hundred percent you know that Domingo Perez committed this attack?

A. To [Herrera]?

Q. Yes.

A. Well, she told me herself.

Q. For you to be 100 percent sure you would have had to be there as a witness, correct?

A. Yeah, I would have but I wasn't.

Q. So you're relying on what somebody else told you, correct?

A. Yes.

Gomez recounted that on May 14, 2009, she was patrolling Herrera's neighborhood when she "could hear the victim's cries for help" through the rolled-down windows of her police vehicle. Soon thereafter, Gomez heard the dispatch call and proceeded to Herrera's home. Gomez described that Herrera's "eyes were kind of rolling back and she was in and out of consciousness."

The jury convicted Perez of burglary, and it assessed punishment at forty-five years' confinement. The trial court signed a judgment in accordance with the jury's verdict and its punishment assessment. Perez did not file a motion for new trial. This appeal followed.

4

## II. DISCUSSION

In his sole issue, Perez contends that his counsel's performance was deficient when she did not object to Torres's testimony that Perez had tried to break into her house before allegedly breaking into Herrera's home and that he used drugs. Perez maintains that Torres lacked personal knowledge, she injected inadmissible extraneous acts into evidence, such testimony was overly prejudicial when weighed against its probative value, and her testimony conveyed hearsay statements. Perez also complains that her trial counsel's performance was deficient in failing to formally request extraneous-offense evidence from the State before trial.

### A. Applicable Law and Standard of Review

The Sixth Amendment to the United States Constitution guarantees the right to reasonably effective assistance of counsel in criminal prosecutions. U.S. CONST. amend. VI; *DeLeon v. State*, 322 S.W.3d 375, 380 (Tex. App.—Houston [14th Dist.] 2010, pet. ref'd). In order to demonstrate ineffective assistance of counsel, a defendant must demonstrate (1) that counsel's performance was deficient and (2) that the deficient performance prejudiced his defense. *Strickland v. Washington*, 466 U.S. 668, 689 (1984). The court evaluates the counsel's performance by an objective standard. *Ex parte Lane*, 303 S.W.3d 702, 707 (Tex. Crim. App. 2009). We give great deference to counsel's performance and begin with the assumption that counsel's conduct fell within the wide range of reasonable professional assistance. *Strickland*, 466 U.S. at 689; *Lane*, 303 S.W.3d at 707. Counsel's assistance prejudices the defense when there is a reasonable probability, sufficient to undermine confidence in the outcome that, but for

5

counsel's deficient performance, the result of the proceeding would have been different. *Strickland*, 466 U.A. at 668; *Lane* 303 S.W.3d at 707. This two-pronged test is "the benchmark for judging . . . whether counsel's conduct so undermined the proper functioning of the adversarial process that the trial cannot be relied on as having produced a just result." *Strickland*, 466 U.S. at 686; *see Lane*, 303 S.W.3d at 707.

## A.    Torres's Testimony

According to Perez, his trial counsel had four legal bases on which to object to Torres's testimony recounting her son's statements to her and that she had heard Perez "was really bad on drugs." First, Texas Rule of Evidence 602, which provides that a witness may testify to a matter only if evidence is introduced sufficient to support a finding that the witness has personal knowledge of the matter. TEX. R. EVID. 602. Second, Perez contends that Torres's testimony recounted hearsay statements by her six-year-old son and unnamed individuals. *See generally id.* at R. 801(d) (defining hearsay). Third, Texas Rule of Evidence 404(b)(1) generally prohibits the admissibility of evidence of a crime, wrong, or other act to prove a person's character in order to show that on a particular occasion the person acted in accordance with the character. *Id.* R. 404(b)(1). Fourth, rule 403, which provides that a court may exclude relevant evidence if its probative value is substantially outweighed by a danger of, among other things, unfair prejudice. *Id.* R. 403.

Perez's complaints regarding Torres's lack of personal knowledge and on her relying hearsay statements fail to overcome the presumption of reasonable trial strategy. *See generally Bone v. State*, 77 S.W.3d 828, 833 (Tex. Crim. App. 2002) ("Appellate

6

review of defense counsel's representation is highly deferential and presumes that counsel's actions fell within the wide range of reasonable and professional assistance."). The question by the State did not overtly call for hearsay testimony. Had Perez's counsel objected to Torres's statement and the objection been sustained, the trial court would have given the jury a curative instruction. *See, e.g., Jackson v. State*, 889 S.W.2d 615, 617 (Tex. App.—Houston [14th Dist.] 1994, pet. ref'd) (providing that in order to properly exclude evidence or obtain an instruction to disregard a nonresponsive answer, a party must object to the nonresponsiveness and inadmissibility of the answer) (citing *Smith v. State*, 763 S.W.2d 836, 841 (Tex. App.—Dallas 1988, pet. ref'd)). Reasonable trial strategy may have persuaded Perez's trial counsel to forgo such an objection and the risk of highlighting the testimony. Further, Torres's testimony suggested that her twelve-year-old son may have been willing to testify. Perez's trial counsel may have determined that it was more advantageous to forego objections to Torres's testimony than risk the State calling a twelve-year-old. Accordingly, Perez's first two ineffective assistance of counsel arguments fail *Strickland's* first prong.

As for Perez's reliance on rule 404(b)(1), there is no clear indication that such an objection would have been sustained. *See Ortiz v. State*, 93 S.W.3d 79, 93 (Tex. Crim. App. 2002) (providing that to show deficient performance, appellant must show evidence was inadmissible). Rule 404(b)(2) provides for the admissibility of evidence of a crime, wrong, or other act for another purpose, such as proving opportunity or intent. TEX. R. EVID. 404(b)(2). Perez's trial counsel may have gauged the chances of prevailing at objecting on extraneous offense grounds as low. *See Bone*, 77 S.W.3d at 833. Trial

7

counsel may have also deemed the instruction to disregard that likely would have followed the sustaining of such an objection to be more detrimental than beneficial as with the hearsay objections. *See id.*; *see also Jackson*, 889 S.W.2d at 617. This argument also fails *Strickland's* first prong.

The same weighing of risks and benefits applies to counsel's failure to object on rule 403 grounds. The instruction to disregard that would have followed a successful objection may have, in trial counsel's judgment, highlighted the statement regarding Perez's drug use. *See Bone*, 77 S.W.3d at 833; *see also Jackson*, 889 S.W.2d at 617. In this case, Perez's trial counsel parlayed Torres's testimony regarding Perez's alleged drug use into a discussion questioning her certainty that Perez was the individual who assaulted Herrera. Therefore, we cannot say that this argument satisfies *Strickland's* first prong.

## B. Rule 404(b) Request

Perez further argues that his trial counsel's assistance was deficient because she failed to send the State a rule 404(b) request. Rule of Evidence 404(b)(2) states, "On timely request by a defendant in a criminal case, the prosecutor must provide reasonable notice before trial that the prosecution intends to introduce such evidence—other than that arising in the same transaction—in its case-in-chief." TEX. R. EVID. 404(b)(2). Perez then references "evidence of [his] prior burglary attempt and drug abuse" in support of this argument. But, there is no indication that the State knew Torres would make such statements. A claim of ineffective assistance must be firmly rooted in the record. *Jackson v. State*, 877 S.W.2d 768, 771–72 (Tex. Crim. App. 1994); *see also Bone*, 77

8

S.W.3d at 833 ("Under normal circumstances, the record on direct appeal will not be sufficient to show that counsel's representation was so deficient and so lacking in tactical or strategic decisionmaking as to overcome the presumption that counsel's conduct was reasonable and professional."). Under the current state of the record, we cannot conclude that Perez's final ineffective assistance of counsel argument satisfies *Strickland's* first prong.

We overrule Perez's sole issue.

### III. CONCLUSION

We affirm the judgment of the trial court.

LETICIA HINOJOSA
Justice

Do not publish.
TEX. R. APP. P. 47.2(b).

Delivered and filed the
5th day of July, 2018.