

### NUMBER 13-17-00415-CR

# COURT OF APPEALS

# THIRTEENTH DISTRICT OF TEXAS

# CORPUS CHRISTI – EDINBURG

LUZALBERT HERNANDEZ A/K/A
LUZ ALBERT HERNANDEZ,                                    Appellant,

v.

THE STATE OF TEXAS,                                      Appellee.

### On appeal from the 24th District Court
### of Victoria County, Texas.

# MEMORANDUM OPINION

### Before Justices Contreras, Longoria, and Hinojosa
### Memorandum Opinion by Justice Contreras

Appellant Luzalbert Hernandez a/k/a Luz Albert Hernandez was convicted on one count of engaging in organized criminal activity and two counts of aggravated robbery, each a first-degree felony. *See* TEX. PENAL CODE ANN. §§ 29.03(a)(2), 71.02 (West, Westlaw through 2017 1st C.S.). Appellant was sentenced to fifty years' imprisonment and a $5,000 fine for each offense, and the sentences were ordered to run concurrently.

He contends by one issue that his trial counsel provided ineffective assistance. We affirm.

## I. BACKGROUND

Appellant, along with Adam Joshua Arredondo and Emilio Suniga III, were indicted for the offenses of engaging in organized criminal activity, aggravated robbery, and aggravated assault, each arising out of the alleged robbery of the J.P. Game Room in Victoria, Texas, on or about March 27, 2016.

At appellant's trial, Henry Nguyen testified that he was the manager of the J.P. Game Room. His employees included Eric Estrada, a server, and Suniga, a security guard whose job duties included stopping people from entering the game room if they were carrying a gun. On March 27, 2016, as Nguyen was removing money from a gaming machine after closing hours, two masked men entered the facility and one pointed a gun at Nguyen's head. The masked men took Nguyen to an office in the back of the game room and asked where he "hid the money." Nguyen replied that there was about $3,000 in an apron he was wearing, and one of the masked men took the money along with Nguyen's wallet and cell phone. The men ordered Nguyen to lie on the floor, and he did, at which point the men "tore up" the office and the rest of the game room looking for more money. Nguyen stated that, at one point, he was struck in the head with a gun. He said the robbers searched Estrada but did not search Suniga. Nguyen was not able to see the face of the man who held him at gunpoint, but he stated that the man's voice sounded "Spanish."

On cross-examination, Nguyen agreed that he was charged with engaging in organized criminal activity in 2017 and pleaded guilty to misdemeanor gambling offenses. He further conceded that, after the robbery, he went to his apartment and called the game room's owner rather than calling 911.

2

Estrada testified that Suniga was responsible for locking the doors when the game room closed at the end of the day. He did not believe Suniga was armed at the time of the robbery. Estrada stated he called 911 after the robbery, and he conceded that he told the dispatcher that the robbers were "black males." He later heard the robbers' voices and determined that they sounded "Hispanic." On cross-examination, he admitted he had "no idea" what race the assailants were.

Florentino Tovar Jr. testified that he is a member of the Tongo prison gang. He acknowledged that he is currently under indictment for participating in a crime with members of another gang, Surenos 13. He stated that appellant, Arredondo, and Suniga are members of Surenos 13. He heard both Arredondo and Suniga talk about "robbing game rooms." Tovar stated: "[A]t the time whenever [Suniga] was talking about robbing the game room he wasn't working at one and then when he got rehired back at the game room that's when he was telling me that it went down." Suniga told Tovar that Suniga, appellant, and Arredondo were involved in the robbery, and Suniga talked "about leaving Victoria after he did it."

Tovar stated that, on March 27, 2016, he let Arredondo borrow clothes including dark blue jeans and a pair of white checkered Nike shoes. The following morning, he was in Arredondo's car, and he noticed that there was "a lot of money" in Arredondo's glove box, even though Arredondo did not have a job. When Tovar asked Arredondo where the money came from, "[h]e said he robbed the game room" with appellant and Suniga. Tovar viewed a surveillance video from the game room on the night in question and he recognized Arredondo, who was wearing Tovar's jeans and shoes, as one of the robbers. He recognized appellant, by his clothes, as the other robber. He also recognized Suniga as the security guard in the video, and he recognized the gun being displayed as formerly

3

belonging to another Surenos 13 gang member. On cross-examination, he conceded he could not be 100% certain that appellant was the second robber in the surveillance video.

Suniga testified that he pleaded guilty to the aggravated robbery and aggravated assault of Nguyen and Estrada. As part of his plea agreement, he admitted that: (1) he, appellant, and Arredondo were members of Surenos 13; (2) Surenos 13 is a criminal street gang; (3) he "faked or feigned a flop or a fall" as security guard while Arredondo and appellant robbed the J.P. Game Room on March 27, 2016; and (4) he told Tovar that he, appellant, and Arredondo had committed the robbery.

Jason Stover, who was a detective with the Victoria Police Department from 2004 to 2016, testified that he was familiar with the Surenos 13 gang and that the gang has more than three members; has a rank structure; has identifiable signs, symbols, or colors; and has been involved in multiple crimes in the Victoria area. Stover stated that appellant is a member of Surenos 13 and is affiliated with another gang, the 18th Street.

Kelly Sebby, a crime scene technician with the Victoria Police Department, testified that she has experience doing fingerprint comparisons and analyzing latent fingerprints. She explained that, in this case, no suitable prints had been recovered from the crime scene.

The State then called Christopher Garcia, a lieutenant with the Victoria County Sheriff's Office. A hearing was held outside the presence of the jury to determine the admissibility of Garcia's testimony. At the hearing, Garcia explained that he worked for the Victoria Police Department from 1979 to 2006, and he described his extensive experience and training in gang-related law enforcement. He stated he was familiar with Surenos 13 and their activities in Victoria County. The trial court found Garcia was qualified to testify, and Garcia testified before the jury that appellant, Arredondo, and

4

Suniga are Surenos 13 members. Garcia further testified that appellant has 18th Street gang tattoos but no Surenos 13 tattoos. On cross-examination, Garcia conceded that juveniles sometimes use the name of a nationally-known gang, such as Surenos 13, without actually being affiliated with the gang. He also stated that the 18th Street gang was not known to operate in Victoria County.

The jury found appellant guilty of engaging in organized criminal activity and the aggravated robbery of both Nguyen and Estrada. This appeal followed.

## II. DISCUSSION

### A. Applicable Law

To obtain a reversal of a conviction on grounds of ineffective assistance of counsel, a defendant must show that: (1) counsel's performance fell below an objective standard of reasonableness and (2) counsel's deficient performance prejudiced the defense, resulting in an unreliable or fundamentally unfair outcome of the proceeding. *Davis v. State*, 278 S.W.3d 346, 352 (Tex. Crim. App. 2009) (citing *Strickland v. Washington*, 466 U.S. 668, 687 (1984)). "Deficient performance means that 'counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment.'" *Ex parte Napper*, 322 S.W.3d 202, 246 (Tex. Crim. App. 2010) (quoting *Strickland*, 466 U.S. at 687). "The prejudice prong of *Strickland* requires showing 'a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different.'" *Id.* at 248 (quoting *Strickland*, 466 U.S. at 694).

The burden is on appellant to prove ineffective assistance of counsel by a preponderance of the evidence. *Thompson v. State*, 9 S.W.3d 808, 813 (Tex. Crim. App. 1999). Appellant must overcome the strong presumption that counsel's conduct fell within the wide range of reasonable professional assistance and that his actions could be

5

considered sound trial strategy. *See Strickland*, 466 U.S. at 689; *Andrews v. State*, 159 S.W.3d 98, 101 (Tex. Crim. App. 2005) (noting that "we commonly assume a strategic motive if any can be imagined and find counsel's performance deficient only if the conduct was so outrageous that no competent attorney would have engaged in it"). A reviewing court will not second-guess legitimate tactical decisions made by trial counsel. *State v. Morales*, 253 S.W.3d 686, 696 (Tex. Crim. App. 2008) ("[U]nless there is a record sufficient to demonstrate that counsel's conduct was not the product of a strategic or tactical decision, a reviewing court should presume that trial counsel's performance was constitutionally adequate . . . ."). Counsel's effectiveness is judged by the totality of the representation, not by isolated acts or omissions. *Thompson*, 9 S.W.3d at 813. An allegation of ineffectiveness must be firmly founded in the record. *See Mata v. State*, 226 S.W.3d 425, 430 (Tex. Crim. App. 2007) (noting that "a reviewing court on direct appeal will rarely be able to fairly evaluate the merits of an ineffective-assistance claim, because the record on direct appeal is usually undeveloped and inadequately reflective of the reasons for defense counsel's actions at trial").

**B. Analysis**

Appellant contends that his trial counsel was ineffective by: (1) failing to request pre-trial notice of the State's expert witnesses under code of criminal procedure article 39.14, *see* TEX. CODE CRIM. PROC. ANN. art. 39.14 (West, Westlaw through 2017 1st C.S.); (2) failing to "adequately" challenge the qualifications of the experts; (3) failing to conduct a voir dire examination of the experts; (4) failing to move to exclude the experts' testimony; and (5) failing to call a rebuttal expert.

Appellant's complaints concern the testimony of three State's witnesses: Stover, Sebby, and Garcia. However, the record shows that appellant's trial counsel was able to

6

question Garcia on voir dire as to his qualifications, and he was able to cross-examine all three witnesses about the substance of their testimony. Appellant does not state what questions he believes his counsel should have asked in order to "adequately" challenge the qualifications of any of the three witnesses, nor does he explain how a rebuttal witness would have assisted his case. And the record is devoid of any indication that, had counsel more aggressively challenged the witnesses' qualifications, their testimony would have been excluded.

Appellant cites *Ex parte Lane*, 303 S.W.3d 702 (Tex. Crim. App. 2009), and *Ex parte Abrams*, No. AP-75,366, 2006 WL 825775 (Tex. Crim. App. 2006) (not designated for publication), two cases where the Texas Court of Criminal Appeals vacated convictions on grounds of ineffective assistance. In *Lane*, the record included an affidavit from a doctor that disputed the admissibility and reliability of the State's expert witness. *See* 303 S.W.3d at 716. In *Abrams*, the record included an affidavit questioning the qualifications of the State's expert witness, and the expert herself conceded that she was not qualified to testify as an expert. *See* 2006 WL 825775, at *2. These cases are distinguishable because, as noted, there is nothing in the record here that would cast doubt upon the reliability or admissibility of the challenged testimony.

To the extent appellant argues that failure to request pre-trial notice under article 39.14 is per se ineffective, we disagree. The State notes that defense counsel may have chosen to forgo such notice so as to avoid the possibility of the State seeking reciprocal notice, and that this would be sound trial strategy. Further, trial counsel could have made a sound strategic decision to decline to challenge the testimony of Sebby and Garcia, because the testimony of those witnesses was, at least in part, favorable to appellant. In particular, Sebby testified that there were no testable prints recovered from the crime

7

scene and Garcia stated that appellant had no tattoos identifying him as a member of Surenos 13.

There is nothing in the record establishing the reasons for counsel's actions and omissions, and we cannot say that those actions and omissions were "so outrageous that no competent attorney" would have done the same. *See Andrews*, 159 S.W.3d at 101. Appellant has therefore failed to satisfy the first prong of *Strickland*, and his issue on appeal is overruled.[1]

### III. CONCLUSION

We affirm the trial court's judgments of conviction.

DORI CONTRERAS
Justice

Do not publish.
TEX. R. APP. P. 47.2(b).

Delivered and filed the
23rd day of August, 2018.

---

[1] We note that "claims of ineffective assistance of counsel rejected due to lack of adequate information may be reconsidered on an application for a writ of habeas corpus." *Lopez v. State*, 343 S.W.3d 137, 143 (Tex. Crim. App. 2011).