# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

## NO. 03-10-00739-CR

**Alton McCless Parker, Appellant**

**v.**

**The State of Texas, Appellee**

---

**FROM THE DISTRICT COURT OF WILLIAMSON COUNTY, 277TH JUDICIAL DISTRICT
NO. 09-1363-K277, THE HONORABLE KEN ANDERSON, JUDGE PRESIDING**

---

## M E M O R A N D U M   O P I N I O N

A jury found appellant Alton McCless Parker guilty of the state jail felony offense of forgery of a financial instrument and assessed his punishment at confinement for two years in a state jail facility and also imposed a $10,000 fine. *See* Tex. Penal Code Ann. §§ 12.35 (West Supp. 2012), 32.21 (West 2011). In a single point of error on appeal, appellant complains that he suffered ineffective assistance of counsel at trial. We affirm the judgment of the trial court.

## BACKGROUND

The record reflects that on July 11, 2009, appellant received a traffic citation from a Williamson County Sheriff's Deputy for driving without a license. Appellant subsequently mailed

a money order, a cover letter, and a copy of his 1099-A federal income tax form to the justice of the peace responsible for collecting the citation fees.[1]

The justice of the peace sent the money order to the Williamson County treasurer for processing. The money order purported to be drawn on an account from the Federal Reserve Bank of Cleveland. Based on her training and experience, the treasurer knew that the Federal Reserve Bank did not issue money orders, so she contacted the bank and confirmed that the money order was not a valid negotiable instrument and would not be honored. The treasurer returned the money order to the justice of the peace as an invalid payment and notified the Williamson County Sheriff's Office, which initiated an investigation.

A detective assigned to investigate property crimes collected the money order and, on inspection, believed it was a forgery because the money order appeared to him to be homemade. As part of his investigation, the detective met with appellant to inquire about the money order. Appellant admitted that he had created the money order and mailed it to the justice of the peace intending that the fees he owed for the traffic citation be paid out of the funds drawn from his account with the Federal Reserve Bank in Cleveland. The detective subsequently contacted the Federal Reserve Bank in Cleveland and learned that the bank does not issue money orders and that appellant did not have an account at the bank.

---

[1] The justice of the peace testified that her court handles traffic violations and that when a person receives a traffic citation, a courtesy letter is provided to the driver at the time of the stop informing them that if they wish to pay the fine, they can do so by cash or credit card in person or by money order or cashier's check by mail. She testified that her court had received what purported to be a money order from appellant for the payment of the fine for his traffic citation.

A representative of the Federal Reserve Bank of Cleveland testified at trial about the operations of the Federal Reserve Bank. He testified that the Federal Reserve Bank does not issue credit cards, mortgages, money orders, or cashier's checks. It does not provide services to individuals or maintain accounts for individuals. Rather, the bank is the centralized bank for the United States of America and provides assistance to financial institutions. He testified that there are no secret personal accounts at the Federal Reserve Bank for individuals that are tied to an individual's social security number. He further explained that appellant was not authorized to draw a money order from the Federal Reserve Bank and was not an authorized agent of the bank.

Appellant testified in his own defense. He stated that there is a difference between an individual's name written in uppercase letters as opposed to an individual's name written in both uppercase and lowercase letters. According to appellant, an individual's name written in all uppercase letters refers to a fictional "government-created entity" while the spelling in upper and lower case letters refers to "the flesh-and-blood man." Appellant identified the cover letter, money order, IRS 1099-A tax form, and traffic citation that he sent to the justice of the peace. He testified that the money order was for payment of his traffic citation and that it was drawn on an unlimited account tied to his birth certificate. According to appellant, he had discovered that the federal government maintains secret "treasury direct accounts" providing "unlimited credit" to all individuals that are tied to each person's birth certificate. He explained that when the federal government went off the gold standard in 1933 it created "a remedy" in the form of an "account" for individuals, although it was up to individuals to learn of the existence of the account and how to access the funds in the account. When an individual reaches the age of 18, the account matures and

3

the government would begin to draw funds off the account. Appellant also testified that in removing the country from the gold standard, the government passed a law providing that if an individual could not discharge his debts, the government would discharge them for him. Appellant claimed that he had tested this theory, submitting two 1040-V tax forms and two money orders to the IRS in 2009, drawn on this secret account, which had been accepted, clearing a substantial tax lien that the government had placed on him. The fact that the IRS accepted the tax forms and money orders and sent him a letter referencing the account convinced him that the account actually existed and could be accessed to pay his debts.

Appellant explained that he created the money order and mailed it, along with the cover letter explaining the purpose of the money order, and his 1099-A federal income tax form to the justice of the peace in payment of the fee for his traffic citation. Appellant signed his name "Alton Parker" as the authorized representative of the government-created entity "ALTON PARKER." Appellant referenced the Federal Reserve Bank in Cleveland as a pass-through entity, intending that the money order be passed through the bank to the government in Washington D.C. for payment. Appellant explained that his social security number is his account number at the Federal Reserve Bank and that the routing number he listed on the money order is a number that is found on the back of his social security card. Appellant claimed that in the present case, a problem arose because he did not properly draft the money order he submitted to discharge the debt of his traffic violation. He explained that he mistakenly put two zeros in front of his social security number, and for that reason the money order did not clear the Federal Reserve Bank.

4

Appellant further testified that he does not file federal income tax forms because he does not believe he is required to. Appellant indicated that by affixing his name to the money order, he did not intend to act as a representative or agent of the Federal Reserve Bank. He denied having any intent to defraud the justice of the peace by submitting the money order in question. Rather, according to his testimony, he believed that the money order would have cleared and been passed along by the Federal Reserve Bank to the federal government in Washington D.C. for payment had he not mistakenly added the two zeros in front of his social security number.

On cross-examination, the State elicited that appellant had not been paying federal income taxes for 30 years. Appellant explained that his taxes had been deducted from his military retirement. He testified that when he received notice of a tax lien, he sent in two money orders he created to pay the debt, claiming that the money orders were from his account at the Federal Reserve Bank. Appellant admitted that he had never paid a dollar into this secret account, that he never visited a branch location about the account, and that he did not have any bank statements pertaining to the account. Appellant also admitted that he did not rely on the secret account to pay his routine expenses, such as groceries, his mortgage, and credit card bills. Rather, he relied on the account only to pay debts to several county government agencies and the IRS.

The jury convicted appellant of the forgery offense as charged in the indictment. At the punishment phase of trial, the State introduced records reflecting that appellant had three prior misdemeanor convictions in 1985 for failure to file income tax returns, which resulted in three

consecutive one year sentences. Appellant again testified.[2] The jury rejected appellant's application for community supervision and assessed his punishment at confinement for two years in a state jail facility and a $10,000 fine.

**DISCUSSION**

In his sole point of error, appellant argues that his trial counsel was ineffective because he: (1) failed to timely request that the trial court instruct the jury that evidence of his prior convictions was not substantive evidence of guilt when appellant testified about his incarceration on direct examination, and (2) failed to object to the limiting instruction the trial court did subsequently give the jury on counsel's later request during appellant's cross-examination.

*Counsel's Alleged Errors*

During appellant's direct examination, trial counsel inquired about whether appellant's belief in the existence of a secret account tied to his birth certificate was influenced by his views of the government. Appellant responded by indicating that he had been a district representative for the "Republic of Texas" for several years. On further questioning about his beliefs possibly motivating his conduct in creating the money order at issue, the following exchange took place:

> Q:      Isn't it fair to say that this whole thing comes out of your way of looking at
>         the world and your relationship to the government?

---

[2] In his testimony during the punishment phase, appellant indicated that he would not follow the terms and conditions of community supervision imposed by the trial court because he did not recognize the court's authority over him. He explicitly stated that he would not accept probation.

A: Well yes. I spent two years and 17 days in federal prison on a misdemeanor. And then after I got out, I looked it up. There was no such thing as a federal misdemeanor. They stacked them one on top of the other to make it look like a felony. And that's what he brought up in court -- [the prosecutor] did -- that I had done a felony.

The follow-up question from counsel revealed that appellant received these consecutive sentences because of "this tax matter." Trial counsel did not request any type of limiting instruction regarding the jury's consideration of this evidence of appellant's prior convictions.[3]

Subsequently, during cross-examination of appellant, the prosecutor asked questions about appellant's failure to pay his federal income taxes—the reason for his incarceration. After

---

[3] We note that appellant first mentioned his prior convictions in a non-responsive answer to counsel's questions about where he obtained the information about these secret accounts:

Q. Where did you acquire this extraordinary information?

A. I got bits and pieces for years. Bits and pieces.

Q. From books? From --

A. Yeah, books.

Q. -- people?

A. Yes, and government forms. But the first key -- And I'll bring this up about the IRS thing. He mentioned in court that I had -- I don't remember the term now -- that I was defrauding the government anyway, and I was convicted of three misdemeanors for willful failure to file. I don't sign 1040 forms. I haven't filed them since that time. I don't file 1040 forms. If they send me a bill, in the future, I'll take care of it with this right here. And that's exactly what I did. They sent me a bill. When I found out about this, I inquired --

However, appellant does not complain about trial counsel's failure to request a limiting instruction at this point.

7

appellant admitted that he did not pay his taxes, appellant's counsel requested a limiting instruction that "this information is offered simply for the defendant's belief and not probative in any way of whether or not he's engaging in fraud in this manner." Counsel explained that he did not want the jury "to be confused about whether or not this line of questioning is probative on the issue of whether or not there was a forgery on the money order." In response, the trial court instructed the jury as follows:

> All right. The only issue in this trial for you to decide is whether the defendant is -- whether the State has proved beyond a reasonable doubt each and every element of the offense.
>
> That's the best I can do.

Appellant's trial counsel did not object to the court's instruction.

After the conclusion of the evidence, during the jury charge conference, appellant's counsel requested a limiting instruction in the jury charge regarding "extraneous matters" that he argued were "not probative of whether or not an offense of forgery was committed in this case." The court granted counsel's request and included an instruction limiting the jury's consideration of the evidence of appellant's prior convictions and extraneous conduct.[4]

---

[4] The court included the following instruction in the jury charge:

> The Defendant is on trial solely on the offense alleged in the indictment. The State has introduced evidence of a crime, wrong, or act other than the offense alleged in the indictment in this case, and with reference to such crime, wrong, or act, you are instructed that said evidence was admitted only for the purpose of showing intent, knowledge, or absence of mistake or accident, if it does.
> You are further charged that if there is any evidence before you in this case tending to show that the defendant committed a crime, wrong, or act other than the

*Ineffective Assistance of Counsel*

To establish ineffective assistance of counsel, an appellant must demonstrate by a preponderance of the evidence both deficient performance by counsel and prejudice suffered by the defendant. *Strickland v. Washington*, 466 U.S. 668, 687 (1984); *Menefield v. State*, 363 S.W.3d 591, 592 (Tex. Crim. App. 2012). The appellant must demonstrate under the first prong that counsel's performance fell below an objective standard of reasonableness under prevailing professional norms. *Strickland*, 466 U.S. at 687-88; *Ex parte Lane*, 303 S.W.3d 702, 707 (Tex. Crim. App. 2009). To meet the second prong, the appellant has to show the existence of a reasonable probability—one sufficient to undermine confidence in the outcome—that but for counsel's deficient performance, the result of the proceeding would have been different. *Strickland*, 466 U.S. at 694; *Lane*, 303 S.W.3d at 707. Failure to make the required showing of either deficient performance or sufficient prejudice defeats the ineffectiveness claim. *Strickland*, 466 U.S. at 700; *see Perez v. State*, 310 S.W.3d 890, 893 (Tex. Crim. App. 2010).

In reviewing a claim of ineffective assistance, we must evaluate the quality of the representation from the totality of counsel's representation rather than counsel's isolated

---

offense alleged in the indictment, you cannot consider said evidence for any purpose unless you first find and believe beyond a reasonable doubt that the defendant committed said crime, wrong, or act. If you find and believe beyond a reasonable doubt that the defendant committed the crime, wrong, or act, you may then consider the same in determining the purpose for which it was introduced, namely, to show intent, knowledge, or absence of mistake or accident, and for no other purpose.

But if you do not believe that the defendant committed the crime, wrong, or act, or if you have a reasonable doubt thereof, you may not consider evidence of said crime, wrong, or act for any purpose whatsoever.

acts or omissions. *Strickland*, 466 U.S. at 689; *Perez*, 310 S.W.3d at 893; *see Branch v. State*, 335 S.W.3d 893, 905 (Tex. App.—Austin 2011, pet. ref'd). Appellate review of counsel's representation is highly deferential; we must indulge a strong presumption that counsel's representation falls within the wide range of reasonable professional assistance—that is, we must presume that trial counsel's actions or inactions and decisions were reasonably professional and motivated by sound trial strategy. *Strickland*, 466 U.S. at 686; *Salinas v. State*, 163 S.W.3d 734, 740 (Tex. Crim. App. 2005); *see Williams v. State*, 301 S.W.3d 675, 687 (Tex. Crim. App. 2009). To rebut that presumption, a claim of ineffective assistance must be "firmly founded in the record" and "the record must affirmatively demonstrate" the meritorious nature of the claim. *See Menefield*, 363 S.W.3d at 592 (citing *Goodspeed v. State*, 187 S.W.3d 390, 392 (Tex. Crim. App. 2005)); *Thompson v. State*, 9 S.W.3d 808, 813 (Tex. Crim. App. 1999).

Direct appeal is usually an inadequate vehicle for raising such a claim because the record is generally undeveloped. *Menefield*, 363 S.W.3d at 592-93. This statement is true with regard to the "deficient performance" prong of the inquiry, when counsel's reasons for failing to do something do not appear in the record. *Id.* at 593. Trial counsel should ordinarily be afforded an opportunity to explain his actions before being denounced as ineffective. *Id.* "If trial counsel is not given that opportunity, then the appellate court should not find deficient performance unless the challenged conduct was 'so outrageous that no competent attorney would have engaged in it.'" *Id.* (quoting *Goodspeed*, 187 S.W.3d at 392).

The burden is on the appellant to affirmatively demonstrate "that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable." *Perez*,

10

310 S.W.3d at 893 (quoting *Strickland*, 466 U.S. at 687). To overcome the presumption that counsel rendered adequate assistance, the appellant must identify the specific acts or omissions of counsel that allegedly constitute ineffective assistance and then affirmatively prove that they fall below the professional norm for reasonableness. *Strickland*, 466 U.S. at 690; *Bone v. State*, 77 S.W.3d 828, 835 (Tex. Crim. App. 2002). Even if an appellant shows that particular errors of counsel were unreasonable, the appellant must further show that they actually had an adverse effect on the defense. *Strickland*, 466 U.S. at 693-95; *Cochran v. State*, 78 S.W.3d 20, 24 (Tex. App.—Tyler 2002, no pet.). Merely showing that the errors had some *conceivable* effect on the proceedings will not suffice. *Strickland*, 466 U.S. at 693; *Martinez*, 330 S.W.3d at 901. The appellant must prove that counsel's errors, judged by the totality of the representation, not by isolated instances of error or by a portion of the trial, denied him a fair trial. *Strickland*, 466 U.S. at 695.

The record in this case fails to reveal why counsel did not request a limiting instruction in response to appellant's unsolicited answer.[5] According to appellant, we should conclude that this failure was an oversight, and not strategic, because counsel later requested a limiting instruction during the State's cross-examination about appellant's failure to pay taxes, which "suggests" that counsel did not want the jury to consider the prejudicial effects of appellant's prior convictions. However, this assertion is mere conjecture about trial counsel's reasoning or strategy. Where the record fails to reflect counsel's reasoning, we will presume he exercised reasonable professional judgment. *Hill v. State*, 303 S.W.3d 863, 879 (Tex. App.—Fort Worth 2009, pet. ref'd);

---

[5] We note that counsel's question about the motivating influence of appellant's beliefs about the government was not designed on its face to elicit the response that appellant was previously incarcerated for the failure to pay federal income taxes.

11

*Poole v. State*, 974 S.W.2d 892, 902 (Tex. App.—Austin 1998, pet. ref'd). It may be that counsel did not want to interrupt his own client's testimony or wanted to avoid drawing attention to his client's non-responsive answer. In addition, by later requesting a limiting instruction, counsel may have been seeking to limit the jury's consideration of the evidence of appellant's continued long-term failure to file federal income tax forms and pay federal income taxes as opposed to the evidence of his 24-year-old misdemeanor convictions. The record also fails to reflect a specific reason why trial counsel did not object to the later purportedly erroneous jury instruction given by the trial court on counsel's request. Counsel may have been satisfied with the instruction given by the trial court. Yet, these explanations for counsel's conduct are mere speculation since the record does not contain evidence as to his motives or strategies.[6]

Absent record evidence regarding counsel's strategy, we cannot speculate as to whether a valid strategy existed, and thus appellant cannot rebut the strong presumption of reasonable assistance. The failure to request a limiting instruction or object to the one given, without explanation for trial counsel's decisions, does not compel a conclusion that trial counsel's performance was deficient. We cannot say that "no reasonable trial strategy could justify" counsel's decision to not initially request a limiting instruction or not to object to the instruction later given at his request. *See Lopez v. State*, 343 S.W.3d 137, 143 (Tex. Crim. App. 2011) (citing *Strickland*, 466 U.S. at 690). Nor can we conclude that counsel's conduct was "so outrageous that no competent attorney would have engaged in it." *See Menefield*, 363 S.W.3d at 592. We find that appellant has

---

[6] While appellant did file a motion for new trial, it did not allege ineffective assistance of counsel but only that "[t]he verdict was contrary to the law and evidence." The trial court denied the motion without conducting an oral hearing.

failed to demonstrate deficient performance on the part of his trial counsel.[7]  Accordingly, we overrule appellant's sole point of error.

## CONCLUSION

Because appellant failed to demonstrate that he suffered ineffective assistance of counsel, we affirm the judgment of the trial court.

_____

J. Woodfin Jones, Chief Justice

Before Chief Justice Jones, Justices Pemberton and Henson

Affirmed

Filed:   August 22, 2012

Do Not Publish

---

[7]  Because appellant failed to meet his burden on the first prong of *Strickland*, we need not consider the requirements of the second prong—prejudice.  *See Lopez v. State*, 343 S.W.3d 137, 144 (Tex. Crim. App. 2011).