TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN






NO. 03-10-00739-CR






Alton McCless Parker, Appellant


v.


The State of Texas, Appellee






FROM THE DISTRICT COURT OF WILLIAMSON COUNTY, 277TH JUDICIAL DISTRICT

NO. 09-1363-K277, THE HONORABLE KEN ANDERSON, JUDGE PRESIDING





M E M O R A N D U M O P I N I O N


 A jury found appellant Alton McCless Parker guilty of the state jail felony offense
of forgery of a financial instrument and assessed his punishment at confinement for two years in a
state jail facility and also imposed a $10,000 fine. See Tex. Penal Code Ann. §§ 12.35 (West Supp.
2012), 32.21 (West 2011). In a single point of error on appeal, appellant complains that he suffered
ineffective assistance of counsel at trial. We affirm the judgment of the trial court.


BACKGROUND

 The record reflects that on July 11, 2009, appellant received a traffic citation from
a Williamson County Sheriff's Deputy for driving without a license. Appellant subsequently mailed
a money order, a cover letter, and a copy of his 1099-A federal income tax form to the justice of the
peace responsible for collecting the citation fees. (1)

 The justice of the peace sent the money order to the Williamson County treasurer for
processing. The money order purported to be drawn on an account from the Federal Reserve Bank
of Cleveland. Based on her training and experience, the treasurer knew that the Federal Reserve
Bank did not issue money orders, so she contacted the bank and confirmed that the money order was
not a valid negotiable instrument and would not be honored. The treasurer returned the money order
to the justice of the peace as an invalid payment and notified the Williamson County Sheriff's
Office, which initiated an investigation.

 A detective assigned to investigate property crimes collected the money order and,
on inspection, believed it was a forgery because the money order appeared to him to be homemade. 
As part of his investigation, the detective met with appellant to inquire about the money order. 
Appellant admitted that he had created the money order and mailed it to the justice of the peace
intending that the fees he owed for the traffic citation be paid out of the funds drawn from his
account with the Federal Reserve Bank in Cleveland. The detective subsequently contacted the
Federal Reserve Bank in Cleveland and learned that the bank does not issue money orders and that
appellant did not have an account at the bank.


 A representative of the Federal Reserve Bank of Cleveland testified at trial about the
operations of the Federal Reserve Bank. He testified that the Federal Reserve Bank does not issue
credit cards, mortgages, money orders, or cashier's checks. It does not provide services to
individuals or maintain accounts for individuals. Rather, the bank is the centralized bank for the
United States of America and provides assistance to financial institutions. He testified that there are
no secret personal accounts at the Federal Reserve Bank for individuals that are tied to an
individual's social security number. He further explained that appellant was not authorized to draw
a money order from the Federal Reserve Bank and was not an authorized agent of the bank.

 Appellant testified in his own defense. He stated that there is a difference between
an individual's name written in uppercase letters as opposed to an individual's name written in both
uppercase and lowercase letters. According to appellant, an individual's name written in all
uppercase letters refers to a fictional "government-created entity" while the spelling in upper and
lower case letters refers to "the flesh-and-blood man." Appellant identified the cover letter, money
order, IRS 1099-A tax form, and traffic citation that he sent to the justice of the peace. He testified
that the money order was for payment of his traffic citation and that it was drawn on an unlimited
account tied to his birth certificate. According to appellant, he had discovered that the federal
government maintains secret "treasury direct accounts" providing "unlimited credit" to all
individuals that are tied to each person's birth certificate. He explained that when the federal
government went off the gold standard in 1933 it created "a remedy" in the form of an "account" for
individuals, although it was up to individuals to learn of the existence of the account and how to
access the funds in the account. When an individual reaches the age of 18, the account matures and
the government would begin to draw funds off the account. Appellant also testified that in removing
the country from the gold standard, the government passed a law providing that if an individual
could not discharge his debts, the government would discharge them for him. Appellant claimed that
he had tested this theory, submitting two 1040-V tax forms and two money orders to the IRS in 2009,
drawn on this secret account, which had been accepted, clearing a substantial tax lien that the
government had placed on him. The fact that the IRS accepted the tax forms and money orders and
sent him a letter referencing the account convinced him that the account actually existed and could
be accessed to pay his debts.

 Appellant explained that he created the money order and mailed it, along with the
cover letter explaining the purpose of the money order, and his 1099-A federal income tax form to
the justice of the peace in payment of the fee for his traffic citation. Appellant signed his
name "Alton Parker" as the authorized representative of the government-created entity
"ALTON PARKER." Appellant referenced the Federal Reserve Bank in Cleveland as a
pass-through entity, intending that the money order be passed through the bank to the government
in Washington D.C. for payment. Appellant explained that his social security number is his account
number at the Federal Reserve Bank and that the routing number he listed on the money order is a
number that is found on the back of his social security card. Appellant claimed that in the present
case, a problem arose because he did not properly draft the money order he submitted to discharge
the debt of his traffic violation. He explained that he mistakenly put two zeros in front of his social
security number, and for that reason the money order did not clear the Federal Reserve Bank.

 Appellant further testified that he does not file federal income tax forms because he
does not believe he is required to. Appellant indicated that by affixing his name to the money order,
he did not intend to act as a representative or agent of the Federal Reserve Bank. He denied having
any intent to defraud the justice of the peace by submitting the money order in question. Rather,
according to his testimony, he believed that the money order would have cleared and been passed
along by the Federal Reserve Bank to the federal government in Washington D.C. for payment had
he not mistakenly added the two zeros in front of his social security number.

 On cross-examination, the State elicited that appellant had not been paying federal
income taxes for 30 years. Appellant explained that his taxes had been deducted from his military
retirement. He testified that when he received notice of a tax lien, he sent in two money orders he
created to pay the debt, claiming that the money orders were from his account at the Federal Reserve
Bank. Appellant admitted that he had never paid a dollar into this secret account, that he never
visited a branch location about the account, and that he did not have any bank statements pertaining
to the account. Appellant also admitted that he did not rely on the secret account to pay his routine
expenses, such as groceries, his mortgage, and credit card bills. Rather, he relied on the account only
to pay debts to several county government agencies and the IRS.

 The jury convicted appellant of the forgery offense as charged in the indictment. At
the punishment phase of trial, the State introduced records reflecting that appellant had three prior
misdemeanor convictions in 1985 for failure to file income tax returns, which resulted in three
consecutive one year sentences. Appellant again testified. (2) The jury rejected appellant's application
for community supervision and assessed his punishment at confinement for two years in a state jail
facility and a $10,000 fine.


DISCUSSION

 In his sole point of error, appellant argues that his trial counsel was ineffective
because he: (1) failed to timely request that the trial court instruct the jury that evidence of his prior
convictions was not substantive evidence of guilt when appellant testified about his incarceration
on direct examination, and (2) failed to object to the limiting instruction the trial court did
subsequently give the jury on counsel's later request during appellant's cross-examination.


Counsel's Alleged Errors

 During appellant's direct examination, trial counsel inquired about whether
appellant's belief in the existence of a secret account tied to his birth certificate was influenced by
his views of the government. Appellant responded by indicating that he had been a district
representative for the "Republic of Texas" for several years. On further questioning about his beliefs
possibly motivating his conduct in creating the money order at issue, the following exchange took
place:


 Q: Isn't it fair to say that this whole thing comes out of your way of looking at
the world and your relationship to the government?

 

 A: Well yes. I spent two years and 17 days in federal prison on a misdemeanor. 
And then after I got out, I looked it up. There was no such thing as a federal
misdemeanor. They stacked them one on top of the other to make it look like
a felony. And that's what he brought up in court -- [the prosecutor] did -- that
I had done a felony.

 

The follow-up question from counsel revealed that appellant received these consecutive sentences
because of "this tax matter." Trial counsel did not request any type of limiting instruction regarding
the jury's consideration of this evidence of appellant's prior convictions. (3)

 Subsequently, during cross-examination of appellant, the prosecutor asked questions
about appellant's failure to pay his federal income taxes--the reason for his incarceration. After
appellant admitted that he did not pay his taxes, appellant's counsel requested a limiting instruction
that "this information is offered simply for the defendant's belief and not probative in any way of
whether or not he's engaging in fraud in this manner." Counsel explained that he did not want the
jury "to be confused about whether or not this line of questioning is probative on the issue of whether
or not there was a forgery on the money order." In response, the trial court instructed the jury
as follows:


 All right. The only issue in this trial for you to decide is whether the
defendant is -- whether the State has proved beyond a reasonable doubt each and
every element of the offense.


 That's the best I can do.


Appellant's trial counsel did not object to the court's instruction.

 After the conclusion of the evidence, during the jury charge conference, appellant's
counsel requested a limiting instruction in the jury charge regarding "extraneous matters" that he
argued were "not probative of whether or not an offense of forgery was committed in this case." The
court granted counsel's request and included an instruction limiting the jury's consideration of the
evidence of appellant's prior convictions and extraneous conduct. (4)

Ineffective Assistance of Counsel

 To establish ineffective assistance of counsel, an appellant must demonstrate by a
preponderance of the evidence both deficient performance by counsel and prejudice suffered by the
defendant. Strickland v. Washington, 466 U.S. 668, 687 (1984); Menefield v. State, 363 S.W.3d 591,
592 (Tex. Crim. App. 2012). The appellant must demonstrate under the first prong that counsel's
performance fell below an objective standard of reasonableness under prevailing professional norms. 
Strickland, 466 U.S. at 687-88; Ex parte Lane, 303 S.W.3d 702, 707 (Tex. Crim. App. 2009). To
meet the second prong, the appellant has to show the existence of a reasonable probability--one
sufficient to undermine confidence in the outcome--that but for counsel's deficient performance,
the result of the proceeding would have been different. Strickland, 466 U.S. at 694; Lane,
303 S.W.3d at 707. Failure to make the required showing of either deficient performance or
sufficient prejudice defeats the ineffectiveness claim. Strickland, 466 U.S. at 700; see Perez v. State,
310 S.W.3d 890, 893 (Tex. Crim. App. 2010).

 In reviewing a claim of ineffective assistance, we must evaluate the quality of
the representation from the totality of counsel's representation rather than counsel's isolated
acts or omissions. Strickland, 466 U.S. at 689; Perez, 310 S.W.3d at 893; see Branch v. State,
335 S.W.3d 893, 905 (Tex. App.--Austin 2011, pet. ref'd). Appellate review of counsel's
representation is highly deferential; we must indulge a strong presumption that counsel's
representation falls within the wide range of reasonable professional assistance--that is, we must
presume that trial counsel's actions or inactions and decisions were reasonably professional and
motivated by sound trial strategy. Strickland, 466 U.S. at 686; Salinas v. State, 163 S.W.3d 734, 740
(Tex. Crim. App. 2005); see Williams v. State, 301 S.W.3d 675, 687 (Tex. Crim. App. 2009). To
rebut that presumption, a claim of ineffective assistance must be "firmly founded in the record" and
"the record must affirmatively demonstrate" the meritorious nature of the claim. See Menefield,
363 S.W.3d at 592 (citing Goodspeed v. State, 187 S.W.3d 390, 392 (Tex. Crim. App. 2005));
Thompson v. State, 9 S.W.3d 808, 813 (Tex. Crim. App. 1999).

 Direct appeal is usually an inadequate vehicle for raising such a claim because the
record is generally undeveloped. Menefield, 363 S.W.3d at 592-93. This statement is true with
regard to the "deficient performance" prong of the inquiry, when counsel's reasons for failing to do
something do not appear in the record. Id. at 593. Trial counsel should ordinarily be afforded an
opportunity to explain his actions before being denounced as ineffective. Id. "If trial counsel is not
given that opportunity, then the appellate court should not find deficient performance unless the
challenged conduct was 'so outrageous that no competent attorney would have engaged in it.'" Id.
(quoting Goodspeed, 187 S.W.3d at 392).

 The burden is on the appellant to affirmatively demonstrate "that counsel's errors
were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable." Perez,
310 S.W.3d at 893 (quoting Strickland, 466 U.S. at 687). To overcome the presumption that counsel
rendered adequate assistance, the appellant must identify the specific acts or omissions of counsel
that allegedly constitute ineffective assistance and then affirmatively prove that they fall below the
professional norm for reasonableness. Strickland, 466 U.S. at 690; Bone v. State, 77 S.W.3d 828,
835 (Tex. Crim. App. 2002). Even if an appellant shows that particular errors of counsel were
unreasonable, the appellant must further show that they actually had an adverse effect on the defense. 
Strickland, 466 U.S. at 693-95; Cochran v. State, 78 S.W.3d 20, 24 (Tex. App.--Tyler 2002, no
pet.). Merely showing that the errors had some conceivable effect on the proceedings will not
suffice. Strickland, 466 U.S. at 693; Martinez, 330 S.W.3d at 901. The appellant must prove that
counsel's errors, judged by the totality of the representation, not by isolated instances of error or by
a portion of the trial, denied him a fair trial. Strickland, 466 U.S. at 695.

 The record in this case fails to reveal why counsel did not request a limiting
instruction in response to appellant's unsolicited answer. (5) According to appellant, we should
conclude that this failure was an oversight, and not strategic, because counsel later requested a
limiting instruction during the State's cross-examination about appellant's failure to pay taxes, which 
"suggests" that counsel did not want the jury to consider the prejudicial effects of appellant's prior
convictions. However, this assertion is mere conjecture about trial counsel's reasoning or strategy. 
Where the record fails to reflect counsel's reasoning, we will presume he exercised reasonable
professional judgment. Hill v. State, 303 S.W.3d 863, 879 (Tex. App.--Fort Worth 2009, pet. ref'd);
Poole v. State, 974 S.W.2d 892, 902 (Tex. App.--Austin 1998, pet. ref'd). It may be that counsel
did not want to interrupt his own client's testimony or wanted to avoid drawing attention to his
client's non-responsive answer. In addition, by later requesting a limiting instruction, counsel may
have been seeking to limit the jury's consideration of the evidence of appellant's continued
long-term failure to file federal income tax forms and pay federal income taxes as opposed to the
evidence of his 24-year-old misdemeanor convictions. The record also fails to reflect a specific
reason why trial counsel did not object to the later purportedly erroneous jury instruction given by
the trial court on counsel's request. Counsel may have been satisfied with the instruction given by
the trial court. Yet, these explanations for counsel's conduct are mere speculation since the record
does not contain evidence as to his motives or strategies. (6)

 Absent record evidence regarding counsel's strategy, we cannot speculate as to
whether a valid strategy existed, and thus appellant cannot rebut the strong presumption of
reasonable assistance. The failure to request a limiting instruction or object to the one given, without
explanation for trial counsel's decisions, does not compel a conclusion that trial counsel's
performance was deficient. We cannot say that "no reasonable trial strategy could justify" counsel's
decision to not initially request a limiting instruction or not to object to the instruction later given
at his request. See Lopez v. State, 343 S.W.3d 137, 143 (Tex. Crim. App. 2011) (citing Strickland,
466 U.S. at 690). Nor can we conclude that counsel's conduct was "so outrageous that no competent
attorney would have engaged in it." See Menefield, 363 S.W.3d at 592. We find that appellant has
failed to demonstrate deficient performance on the part of his trial counsel. (7) Accordingly, we
overrule appellant's sole point of error.


CONCLUSION

 Because appellant failed to demonstrate that he suffered ineffective assistance of
counsel, we affirm the judgment of the trial court.


 __________________________________________

 J. Woodfin Jones, Chief Justice

Before Chief Justice Jones, Justices Pemberton and Henson

Affirmed

Filed: August 22, 2012

Do Not Publish
1. The justice of the peace testified that her court handles traffic violations and that when a
person receives a traffic citation, a courtesy letter is provided to the driver at the time of the stop
informing them that if they wish to pay the fine, they can do so by cash or credit card in person or
by money order or cashier's check by mail. She testified that her court had received what purported
to be a money order from appellant for the payment of the fine for his traffic citation.
2. In his testimony during the punishment phase, appellant indicated that he would not follow
the terms and conditions of community supervision imposed by the trial court because he did not
recognize the court's authority over him. He explicitly stated that he would not accept probation.
3. We note that appellant first mentioned his prior convictions in a non-responsive answer
to counsel's questions about where he obtained the information about these secret accounts:


 Q. Where did you acquire this extraordinary information?

 

 A. I got bits and pieces for years. Bits and pieces.

 

 Q. From books? From --

 

 A. Yeah, books.

 

 Q. -- people?

 

 A. Yes, and government forms. But the first key -- And I'll bring this up about
the IRS thing. He mentioned in court that I had -- I don't remember the term
now -- that I was defrauding the government anyway, and I was convicted of
three misdemeanors for willful failure to file. I don't sign 1040 forms. I
haven't filed them since that time. I don't file 1040 forms. If they send me
a bill, in the future, I'll take care of it with this right here. And that's exactly
what I did. They sent me a bill. When I found out about this, I inquired --


However, appellant does not complain about trial counsel's failure to request a limiting instruction
at that point.
4. The court included the following instruction in the jury charge:


 The Defendant is on trial solely on the offense alleged in the indictment. The
State has introduced evidence of a crime, wrong, or act other than the offense alleged
in the indictment in this case, and with reference to such crime, wrong, or act, you
are instructed that said evidence was admitted only for the purpose of showing intent,
knowledge, or absence of mistake or accident, if it does.

 You are further charged that if there is any evidence before you in this case
tending to show that the defendant committed a crime, wrong, or act other than the
offense alleged in the indictment, you cannot consider said evidence for any purpose
unless you first find and believe beyond a reasonable doubt that the defendant
committed said crime, wrong, or act. If you find and believe beyond a reasonable
doubt that the defendant committed the crime, wrong, or act, you may then consider
the same in determining the purpose for which it was introduced, namely, to show
intent, knowledge, or absence of mistake or accident, and for no other purpose.

 But if you do not believe that the defendant committed the crime, wrong, or
act, or if you have a reasonable doubt thereof, you may not consider evidence of said
crime, wrong, or act for any purpose whatsoever.

5. We note that counsel's question about the motivating influence of appellant's beliefs about
the government was not designed on its face to elicit the response that appellant was previously
incarcerated for the failure to pay federal income taxes.
6. While appellant did file a motion for new trial, it did not allege ineffective assistance of
counsel but only that "[t]he verdict was contrary to the law and evidence." The trial court denied
the motion without conducting an oral hearing.
7. Because appellant failed to meet his burden on the first prong of Strickland, we need not
consider the requirements of the second prong--prejudice. See Lopez v. State, 343 S.W.3d 137, 144
(Tex. Crim. App. 2011).