# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

## NO. 03-11-00427-CR

**Ronny Gene Smith, Appellant**

**v.**

**The State of Texas, Appellee**

### FROM THE DISTRICT COURT OF BELL COUNTY, 426TH JUDICIAL DISTRICT
### NO. 67,764, HONORABLE FANCY H. JEZEK, JUDGE PRESIDING

## M E M O R A N D U M   O P I N I O N

A jury convicted Ronnie Gene Smith, appellant, of sexual assault and assessed punishment, enhanced pursuant to the habitual offender statute, at sixty years in prison. *See* Tex. Penal Code Ann. §§ 12.42(d) (West Supp. 2012), 22.011 (West 2011). In two appellate issues, he asserts that he received ineffective assistance of counsel in violation of his constitutional rights and that the trial court erred in denying two motions for continuance made by his attorneys. We will affirm the trial court's judgment.

### FACTUAL AND PROCEDURAL BACKGROUND

In the early hours of September 1, 2010, A.T. was returning to Belton from Temple on Interstate 35 in a car driven by her boyfriend. Her boyfriend had consumed alcohol but refused to let her drive, whereupon she forced him to let her out of the car. She was carrying a purse that contained, among other things, a cellular phone and a cigarette lighter. She began walking to Temple

along the highway when a man approached her and forced her into a ditch below a concrete embankment. He vaginally penetrated her while restraining her by the neck. The assailant released her and instructed her to start walking and to not look back at him. The assailant kept A.T.'s purse, including the cell phone and cigarette lighter. She went to a roadside motel for help and called the police. A.T. was examined at Scott & White Hospital where a SANE[1] nurse took swabs from her vagina. Police obtained the number of her cell phone and determined that after the time of the assault the phone had called a tree-trimming service that was operating temporarily out of a hotel in Belton. Appellant was a temporary employee of the service. Police spoke to appellant at the hotel, and he voluntarily provided a DNA sample by means of a cheek swab. Brandy Hendrickson, who rented the hotel room with her children and is a co-owner of the service, spoke with police and consented to a search of the room. Hendrickson also informed police that appellant had been staying in the room with them but had gone out the night of the crime and returned later that morning with what police later identified as A.T.'s cell phone. Hendrickson testified that before appellant had left the room that night at approximately 10:30 or 11:00, he had stated that "he was so horny that he was seeing blurry." Police found A.T.'s phone in the hotel room along with a lighter that matched the one that had been in her purse. In their search of the room, police also found a pair of women's underwear that Hendrickson testified did not belong to her or any of her children. During the course of the investigation, police also took a DNA sample from J.R.T, a person who suffered from schizophrenia and was known to frequent the area in which A.T. was attacked. The sample was never tested because police eliminated J.R.T. as a possible suspect. Later DNA testing compared

---

[1] "SANE" is an acronym for Sexual Assault Nurse Examiner.

the cheek swab taken from appellant with the sample taken from A.T. and matched them with a "reasonable degree of scientific certainty."

Appellant was indicted for a single count of sexual assault. One week prior to the start of the trial, appellant's attorney, Stephen White, asked the trial court to appoint co-counsel because of a "personality conflict" between White and appellant. The court appointed attorney Anthony Smith to serve as co-counsel. On the day that the trial on the merits was scheduled to begin, Smith individually filed a motion for continuance saying that he had not had sufficient time to prepare for trial. White simultaneously filed a separate motion for continuance, citing as grounds his client's desire to obtain independent testing of the DNA sample taken from J.R.T. and retesting of appellant's own DNA sample in order to investigate potential chain-of-custody issues.[2] White informed the trial judge that he had known about the samples for "quite some time" and that his failure to ask for testing was part of his trial strategy, but that appellant now wanted the samples tested. The court denied both motions. Smith had also filed a separate motion for discovery of exculpatory and mitigating evidence, which the court denied as untimely. *See generally Brady v. Maryland*, 373 U.S. 83 (1963). A jury convicted appellant and assessed a sentence of sixty years in prison. Appellant did not file a motion for a new trial. In this appeal he argues that he received ineffective assistance of counsel and that the trial court abused its discretion by denying his motions for continuance.

---

[2] White mentioned at the hearing on the continuance motion that the samples from appellant and J.R.T. were "collected at the same time," but testimony during the trial revealed that the two samples were collected, stored, and submitted to the lab separately.

3

## STANDARD OF REVIEW

In order to establish ineffective assistance of counsel, an appellant must demonstrate by a preponderance of the evidence (1) deficient performance by counsel, and (2) prejudice suffered by the defendant. *Strickland v. Washington*, 466 U.S. 668, 687 (1984); *Menefield v. State*, 363 S.W.3d 591, 592 (Tex. Crim. App. 2012). Under the first prong of the test, appellant must demonstrate that counsel's performance fell below an objective standard of reasonableness under prevailing professional norms. *Strickland*, 466 U.S. at 687-88; *Ex parte Lane*, 303 S.W.3d 702, 707 (Tex. Crim. App. 2009). To meet the second prong, the appellant has to show the existence of a reasonable probability—one sufficient to undermine confidence in the outcome—that but for counsel's deficient performance, the proceeding would have reached a different result. *Strickland*, 466 U.S. at 694; *Lane*, 303 S.W.3d at 707. Failure to make the required showing of either element defeats the ineffectiveness claims. *Strickland*, 466 U.S. at 700; *see Perez v. State*, 310 S.W.3d 890, 893 (Tex. Crim. App. 2010).

We evaluate the quality of the representation from the totality of counsel's representation rather than counsel's isolated actions or omissions. *Strickland*, 466 U.S. at 689; *Perez*, 310 S.W.3d at 893; *see Branch v. State*, 335 S.W.3d 893, 905 (Tex. App.—Austin 2011, pet. ref'd). Appellate review of counsel's representation is highly deferential; we indulge a strong presumption that counsel's representation falls within the wide range of reasonable professional assistance. In other words, we must presume that trial counsel's actions or inactions and decisions were reasonable, professional, and motivated by sound trial strategy. *Strickland*, 466 U.S. at 686; *Salinas v. State*, 163 S.W.3d 734, 740 (Tex. Crim. App. 2005); *see Williams v. State*,

301 S.W.3d 675, 687 (Tex. Crim. App. 2009). In order to rebut that presumption, a claim of ineffective assistance must be "firmly founded in the record" and "the record must affirmatively demonstrate" the meritorious nature of the claim. *See Menefield*, 363 S.W.3d at 592 (citing *Goodspeed v. State*, 187 S.W.3d 390, 392 (Tex. Crim. App. 2005)); *Thompson v. State*, 9 S.W.3d 808, 813 (Tex. Crim. App. 1999).

Direct appeal is usually an inadequate vehicle for raising such a claim because the record is generally undeveloped. *Menefield*, 363 S.W.3d at 592-93. With regard to the "deficient performance" prong of the inquiry, direct appeal is inadequate when counsel's reasons for failing to do something do not appear in the record. *Id. at* 592. Trial counsel should ordinarily be afforded an opportunity to explain his actions before being denounced as ineffective. *Id.* "If trial counsel is not given that opportunity, then the appellate court should not find deficient performance unless the challenged conduct was 'so outrageous that no competent attorney would have engaged in it.'" *Id*. (quoting *Goodspeed*, 187 S.W.3d at 392).

The burden is on the appellant to affirmatively demonstrate that "counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable." *Perez*, 310 S.W.3d at 893 (quoting *Strickland*, 466 U.S. at 687). To overcome the presumption that counsel rendered adequate assistance, the appellant must identify the specific acts or omissions that allegedly constitute ineffective assistance and then affirmatively prove that they fall below the professional norm for reasonableness. *Strickland*, 466 U.S. at 690; *Bone v. State*, 77 S.W.3d 828, 835 (Tex. Crim. App. 2002). Even if an appellant shows that particular errors of counsel were unreasonable, the appellant must further show that they actually had an adverse effect on the defense. *Strickland*,

466 U.S. at 693-95; *Cochran v. State,* 78 S.W.3d 20, 24 (Tex. App.—Tyler 2002, no pet.). Merely showing that the errors had some *conceivable* effect on the proceedings will not suffice. *Strickland*, 466 U.S. at 693; *Ex parte Martinez*, 330 S.W.3d 891, 901 (Tex. Crim. App. 2011). The appellant must prove that counsel's errors, judged by the totality of the representation, not by isolated instances of error or by a portion of the trial, denied him a fair trial. *Strickland*, 466 U.S. at 695.

### DISCUSSION

Appellant first argues that his trial counsel performed deficiently by failing to assert a timely motion for exculpatory and mitigating evidence under *Brady*, failing to move for independent retesting of the DNA samples taken from appellant and J.R.T., and failing to arrange for forensic testing of the underwear found by police in Hendrickson's hotel room. Appellant argues that these omissions constitute unreasonable performance by his counsel because appellant believes that independent testing of the DNA samples could reveal issues with the chain of custody of both samples and that if testing revealed that the underwear belonged to A.T. it would "severely" undermine her credibility because she stated several times that she had not been wearing underwear on the night of the attack.

With respect to trial counsel's failure to file a motion for exculpatory evidence, failure to bring a timely motion to disclose could not have prejudiced appellant's case because the State has an "affirmative and ongoing duty" to disclose material evidence whether or not the defendant makes a request for disclosure. *Michaelwicz v. State*, 186 S.W.3d 601, 613 (Tex. App.—Austin 2006, pet. ref'd); *see also U.S. v. Bagley*, 473 U.S. 667, 682 (1985).

6

The record in this case does not reveal White's thinking in failing to pursue independent testing of J.R.T.'s DNA and the underwear. Appellant did not move for a new trial, and consequently White was not given an opportunity to explain his trial strategy.[3] Nothing in the record before us rebuts the presumption that White's decision not to pursue independent testing of the DNA and the pair of underwear was part of a sound and professionally reasonable trial strategy. Even if police had actually collected and stored the DNA samples at the same time, as White apparently believed at the start of the trial, appellant is simply speculating that results might reveal chain-of-custody issues with either sample. Just as likely is that new tests would confirm the State's evidence that appellant was the only possible donor of the DNA found within A.T. This seems especially likely given that the State's expert testified that the test found only one DNA donor sample inside A.T., and that the probability of randomly selecting an unrelated person with that DNA profile was one in 5.464 quintillion for African-American males.[4] Even if a new test did reveal that the samples taken from appellant and from J.R.T. were cross-contaminated, it would not exculpate appellant because J.R.T. appears from the record to have a satisfactory alibi for the time of the crime. Moreover, it appears from the record that White's trial strategy centered around questioning A.T.'s credibility on the issue of consent, and we do not see how retesting the evidence that proved that appellant and A.T. had sexual contact would advance that strategy.

---

[3] White did, however, inform the court during the hearing on his motion for continuance, discussed below, that there was "some trial strategy involved" in his decision not to ask for independent testing of the DNA samples, but he but did not elaborate further.

[4] Appellant is African-American.

7

Appellant's idea that the pair of underwear found in the hotel room belonged to A.T. at all is also speculative at best and lacks any evidence in the record to support it. Even assuming that testing would have revealed that the underwear belonged to A.T., the State would almost certainly have used the presence of the underwear in Hendrickson's room—a room that appellant had stayed in and had returned to after the time of the attack—as further probative evidence of appellant's guilt. We think it unlikely that White could have done much, if any, additional damage to A.T.'s credibility with the new evidence. White could have reasonably decided that the risk of bolstering the State's case outweighed any remote possibility that the underwear might have impeachment value in his case. In sum, we hold that appellant has not affirmatively shown that any of the specific acts or omissions of his trial counsel that he complains of on appeal were unreasonable. *Strickland*, 466 U.S. at 690; *Bone*, 77 S.W.3d at 835. In any event, appellant must prove both that his counsel acted unreasonably and that counsel's error resulted in actual prejudice to the defendant. Given the overwhelming weight of the evidence against him, especially the DNA evidence, we conclude that appellant has failed to demonstrate prejudice. We overrule appellant's first issue.

Appellant argues in his second issue that the trial court erred in denying White's motion for continuance to allow time for independent DNA testing and erred in denying Smith's motion for continuance so that he could more fully prepare for trial. We review a trial court's ruling on a motion for continuance for abuse of discretion. *Gallo v. State*, 239 S.W.3d 757, 764 (Tex. Crim. App. 2007). An appellant must show that he was actually prejudiced by denial of his motion. *Janecka v. State*, 937 S.W.2d 456, 468 (Tex. Crim. App. 1996). An appellate court will conclude

that there was an abuse of discretion "only if the record shows with considerable specificity how the defendant was harmed by the absence of more preparation time than he actually had." *Gonzales v. State*, 304 S.W.3d 838, 842-43 (Tex. Crim. App. 2010) (quoting George E. Dix & Robert O. Dawson, 42 Texas Practice: Criminal Practice and Procedure § 28.56 (2d ed. 2001)). This showing can ordinarily be made only at a hearing on a motion for new trial. *Id*. at 842-43. Something more than speculation as to what an attorney might have accomplished if granted extra time to examine evidence is required to justify reversal on appeal. *Renteria v. State*, 206 S.W.3d 689, 702 (Tex. Crim. App. 2006); *Nwosoucha v. State*, 325 S.W.3d 816, 825-26 (Tex. App.—Houston [14th Dist.] 2010, pet. ref'd).

Appellant argues that the trial court's refusal to grant both motions prevented his counsel from rendering effective assistance because they would not be fully prepared to defend him at trial. He cites to dicta in *United States v. Cronic*, 466 U.S. 648, 659-660 (1984), where the Supreme Court acknowledged that there could be certain circumstances surrounding a case that would justify a presumption of prejudice to the defendant under the Sixth Amendment even if counsel was present to assist him. The Court in that case nevertheless upheld the conviction of the petitioner against a claim that circumstances effectively denied him the assistance of counsel where his original counsel had withdrawn shortly before trial, the trial court appointed a real estate attorney to defend him and afforded him less than 30 days to prepare for trial in a case that had been investigated for years and generated voluminous amounts of documents. Appellant does not tell us how the court's denial of the continuance motions prejudiced him more than the defendant in *Cronic,* and we do not think he could do so. As we discussed in relation to appellant's first issue, appellant

9

is unable to show that he was prejudiced by not having additional time to pursue independent DNA testing because any benefit he might have gained from it is speculative at best. As for Smith's motion for continuance, although he admittedly had a short time to prepare for trial, he was appointed at a late date solely because of White's personality conflicts with appellant. The court appointed White to defend appellant on March 15, 2011, and the trial on the merits started on May 23, 2011, leaving White more than two months to prepare for trial. During the hearing on the motions for continuance, the prosecutor stated for the record that White represented that he was ready for trial at the time he asked the court to appoint co-counsel, and White did not contradict her. We fail to see how the defendant suffered prejudice when he received the assistance of an attorney who had adequate time to prepare the case for trial and who stated that he was ready to try the case on his own a little over a week before the trial was scheduled to start. On this record, we hold that the trial court did not abuse its discretion in denying both of appellant's continuance motions. We overrule appellant's second issue.

## CONCLUSION

Having overruled appellant's two issues, we affirm the trial court's judgment.

_____

J. Woodfin Jones, Chief Justice

Before Chief Justice Jones, Justices Pemberton and Field

Affirmed

Filed: January 15, 2013

Do Not Publish

10