Fourth Court of Appeals
San Antonio, Texas


## MEMORANDUM OPINION

No. 04-19-00584-CV

**IN THE INTEREST OF A.N.**, A.E.N., and E.O.R., Children

From the 45th Judicial District Court, Bexar County, Texas
Trial Court No. 2018-PA-02564
Honorable Charles E. Montemayor, Judge Presiding

Opinion by:     Rebeca C. Martinez, Justice

Sitting:          Rebeca C. Martinez, Justice
                  Beth Watkins, Justice
                  Liza A. Rodriguez, Justice

Delivered and Filed: January 22, 2020

AFFIRMED

This is an accelerated appeal from an order terminating the parental rights of appellant

("Mother") to her children, Alex, Amy, and Emily.[1]   In her sole issue, Mother challenges the

sufficiency of the evidence to support the trial court's finding that termination of her parental rights

is in the children's best interest.  *See* TEX. FAM. CODE ANN. § 161.001(b)(2).  We affirm.

### BACKGROUND

On November 13, 2018, the Texas Department of Family and Protective Services (the

"Department") filed a petition to terminate Mother's parental rights.  The trial court held a bench

---

[1] To protect the identities of the minor children in this appeal, we refer to appellant as "Mother," and we refer to the children and their presumed and alleged fathers by aliases.  *See* TEX. FAM. CODE ANN. § 109.002(d); TEX. R. APP. P. 9.8(b)(2).  In this opinion, we refer to A.N. as "Alex," A.E.N. as "Amy," and E.O.R. as "Emily."  We refer to the presumed father of the children as "Anthony," and we refer to the alleged father of Emily as "James."  The trial court's order terminates Anthony's and James's parental rights, but only Mother appeals.

trial on August 20, 2019, at which Mother and the Department's caseworker, Norma Hayes, testified. At the time of trial, Alex was fifteen, Amy was eleven, and Emily was one. A week later, the trial court signed an order that terminates Mother's parental rights to her children. The trial court found five statutory grounds for termination[2] and that termination was in the children's best interest.

## STANDARD OF REVIEW

A parent-child relationship may be terminated only if the trial court finds by clear and convincing evidence one of the predicate grounds enumerated in section 161.001(b)(1) of the Family Code and that termination is in a child's best interest. *Id.* § 161.001(b)(1), (2). Clear and convincing evidence requires "proof that will produce in the mind of the trier of fact a firm belief or conviction as to the truth of the allegations sought to be established." *Id.* § 101.007. We review the legal and factual sufficiency of the evidence under the standards of review established by the Texas Supreme Court in *In re J.F.C.*, 96 S.W.3d 256, 266–67 (Tex. 2002). Under these standards, "[t]he trial court is the sole judge of the weight and credibility of the evidence, including the testimony of the Department's witnesses." *In re F.M.*, No. 04-16-00516-CV, 2017 WL 393610, at *4 (Tex. App.—San Antonio Jan. 30, 2017, no pet.) (mem. op.) (first citing *In re H.R.M.*, 209 S.W.3d 105, 108 (Tex. 2006) (per curiam); then citing *City of Keller v. Wilson*, 168 S.W.3d 802, 819 (Tex. 2005)).

---

[2] The trial court found Mother

> knowingly placed or knowingly allowed the children to remain in conditions or surroundings which endanger the physical or emotional well-being of the children[;] . . . engaged in conduct or knowingly placed the children with persons who engaged in conduct which endangers the physical or emotional well-being of the children[;] . . . constructively abandoned the children[;] . . . failed to comply with the provisions of a court order[;] . . . [and] used a controlled substance . . . in a manner that endangered the health or safety of the children, and (1) failed to complete a court-ordered substance abuse treatment program[,] or (2) after completion of a court-ordered substance abuse treatment program continued to abuse a controlled substance . . . [.]

*See* TEX. FAM. CODE ANN. § 161.001(b)(1)(D), (E), (N), (O), (P).

**BEST INTEREST**

In her sole issue, Mother challenges the sufficiency of the evidence to support the trial court's finding that termination of her parental rights is in her children's best interest. There is a strong presumption that keeping a child with a parent is in a child's best interest. *In re R.R.*, 209 S.W.3d 112, 116 (Tex. 2006) (per curiam). However, it is equally presumed that "the prompt and permanent placement of the child in a safe environment is . . . in the child's best interest." TEX. FAM. CODE ANN. § 263.307(a). In determining whether a child's parent is willing and able to provide the child with a safe environment, we consider the factors set forth in Texas Family Code section 263.307(b). *See id.* § 263.307(b).

Our best-interest analysis is guided by consideration of the non-exhaustive *Holley* factors. *See Holley v. Adams*, 544 S.W.2d 367, 371–72 (Tex. 1976). These factors include: (1) the child's desires; (2) the child's present and future emotional and physical needs; (3) any present or future emotional and physical danger to the child; (4) the parental abilities of the individuals seeking custody; (5) the programs available to assist the individuals seeking custody to promote the child's best interest; (6) the plans for the child by the individuals or agency seeking custody; (7) the stability of the home or proposed placement; (8) the parent's acts or omissions which may indicate that the existing parent-child relationship is improper; and (9) any excuse for the parent's acts or omissions. *See id.*; *accord In re E.C.R.*, 402 S.W.3d 239, 249 n.9 (Tex. 2013). The Department is not required to prove each factor, and the absence of evidence regarding some of the factors does not preclude the factfinder from reasonably forming a strong conviction that termination is in a child's best interest, particularly if the evidence is undisputed that the parent-child relationship endangered the safety of the child. *See In re C.H.*, 89 S.W.3d 17, 27 (Tex. 2002). The focus of our review is whether the evidence, as a whole, is sufficient for the trial court to have formed a

strong conviction or belief that termination of the parent-child relationship is in the best interest of the child.  *Id.*

In this case, Mother testified that she understood the Department had removed her children because she had been "using" and had attended Alcoholics Anonymous meetings inconsistently. Mother testified that, prior to her children's removal, she received safety plans from the Department and that her first interactions with the Department commenced approximately seventeen months before trial.  After the children's removal, the Department prepared a service plan for Mother, and the trial court ordered Mother's compliance with the plan.  Mother's service plan required her to complete domestic violence classes; engage in individual counseling; complete a drug assessment; and demonstrate sobriety through random drug tests.

The Department's caseworker, Hayes, testified that she sent Mother for drug treatment three times during the course of the case, but Mother was discharged unsuccessfully each time for nonparticipation.  Mother testified that she last "used" in June 2018, approximately two months before trial.  Mother admitted to allegations that the alleged father of Emily, James, supplied her with "ice," which is a form of methamphetamine.[3]  Hayes further testified that Anthony, Mother's husband and the presumed father of the children, reported to Hayes that Mother and James used drugs together.  Mother affirmed that she was using drugs until four months before trial, but she insisted that she had never used drugs until recently.  Mother explained that she used drugs while her children were in the Department's care "so [she could] function."  Mother stated that, if she took a drug test on the day of trial, it would return a negative result.  Hayes testified that Mother went to only two out of eighteen scheduled drug tests and attributed Mother's failures to attend to

---

[3] "'Ice' is a street name for methamphetamine hydrochloride."  *Rivera v. State*, No. 02-05-00056-CR, 2006 WL 743030, at *2 n.4 (Tex. App.—Fort Worth Mar. 23, 2006, pet. ref'd) (mem. op.); *see also Ex parte Lane*, 303 S.W.3d 702, 715 n.7 (Tex. Crim. App. 2009) (describing "ice" as "the form of methamphetamine that is smoked").

communication problems. Mother did not directly answer a question posed to her about her failures to attend but responded that she had been homeless during the course of the case.

Illicit drug use is relevant to multiple *Holley* factors, including the children's emotional and physical needs now and in the future, the emotional and physical danger to the children now and in the future, Mother's parental abilities, the stability of Mother's home, and the acts or omissions which may indicate an improper parent-child relationship. *See Holley*, 544 S.W.2d at 371–72; *In re A.M.L.*, No. 04-19-00422-CV, 2019 WL 6719028, at *4 (Tex. App.—San Antonio Dec. 11, 2019, no pet. h.) (explaining that a trial court could infer a parent's drug abuse from the parent's failure to submit to drug testing and that drug use implicates multiple *Holley* factors). "Additionally, a parent's illegal drug use exposes [a] child to the possibility that the parent may be impaired or imprisoned." *In re A.M.L.*, 2019 WL 6719028, at *4 (citing *In re E.R.W.*, 528 S.W.3d 251, 264 (Tex. App.—Houston [14th Dist.] 2017, no pet.)). Here, the trial court could have disbelieved Mother's insistence that she had ended her drug use. *See In re E.A.M.V.*, No. 04-18-00866-CV, 2019 WL 1923214, at *4 (Tex. App.—San Antonio May 1, 2019, pet. denied) (mem. op.) (explaining that a trial court could have disbelieved a parents' testimony and that appellate courts defer to the factfinder on witness credibility issues). Alternatively, the trial court could have credited Mother's admissions that she used drugs two months before trial and that James supplied her with methamphetamine to determine that Mother's recent improved conduct did not conclusively negate the probative value of a history of drug use and irresponsible choices. *See In re J.O.A.*, 283 S.W.3d 336, 346 (Tex. 2009); *see also In re E.D.*, 419 S.W.3d 615, 620 (Tex. App.—San Antonio 2013, pet. denied) ("A trier of fact may measure a parent's future conduct by his past conduct . . . .").

Hayes testified that domestic violence played a role in the children's removal. Mother testified that she was a victim of violence. She stated that Anthony had been violent with her, but

that she and Anthony had been separated for seven years. However, Mother acknowledged that she had a close relationship with Anthony and that she and Anthony had sexual intercourse within the past two years. Mother also testified that she had been attacked on two occasions by the girlfriend of James. According to Mother, the children were not present during the girlfriend's attacks. Mother testified that she had verbal arguments with James; there was "yelling back and forth," but never physical violence. Mother denied having seen James for the three months preceding trial. Hayes testified that Anthony reported to her that Mother and James "have a violent relationship . . . [and] they would fight."

The trial court, as the sole arbiter of the witnesses' credibility, could have credited testimony indicating that Mother had an ongoing and physically violent relationship with either or both Anthony and James. Although Mother denied an ongoing relationship with Anthony, she also stated that she was close to him and had been intimate with him within the last two years. Mother testified, as to James, that she had not seen him for the past three months, but the trial court could have reasonably disbelieved Mother's denial, especially in light of Mother's admissions that James supplied her drugs and that she used drugs within the last three months. Evidence of Mother's violent relationships with Anthony and James, even if the violence was not directed at the children, supports the trial court's best-interest finding under the third *Holley* factor— emotional and physical danger to the children now and in the future. *See Holley*, 544 S.W.2d at 371–72; *see also* TEX. FAM. CODE ANN.§ 263.307(b)(12)(E) (providing that a court may consider whether a parent has adequate skills to protect a child from repeated exposure to violence although violence may not be directed at the child); *In re S.A.*, No. 04-17-00571-CV, 2018 WL 521626, at *4 (Tex. App.—San Antonio Jan. 24, 2018, no pet.) (mem. op.) ("Simply exposing a child to the other parent's violence is a relevant consideration in determining a child's best interest.").

Mother acknowledged being homeless throughout the case but testified that she was living with her aunt at the time of trial. Mother also stated that she had a job taking care of her aunt, who has special needs, but clarified that it was not a paying job. When asked how Mother would financially support her children, Mother explained that her job search continued and stated, "It's hard to function on a day without your babies." *See In re D.M.*, 452 S.W.3d 462, 470 (Tex. App.—San Antonio 2014, no pet.) ("In analyzing [the *Holley*] factors, we focus on the best interest of the child, not the best interest of the parent."). Mother stated that she did not have a family support network because her family does not support her as a "user," and she has to "get [herself] together" before they will.

*Holley* factor seven concerns the stability of the home. *Holley*, 544 S.W.2d at 372; *see also* TEX. FAM. CODE ANN. § 263.307(b)(13) (providing that a court may consider whether an adequate social support system consisting of extended family and friends is available to the child). "A child's need for permanence through the establishment of a 'stable, permanent home' has been recognized as the paramount consideration in a best-interest determination." *In re L.G.R.*, 498 S.W.3d 195, 205 (Tex. App.—Houston [14th Dist.] 2016, pet. denied). Here, the trial court reasonably could have determined that Mother's failures to maintain stable housing until just before trial and her inability to obtain employment subjected her children to a life of uncertainty and instability. *See In re K.J.G.*, No. 04-19-00102-CV, 2019 WL 3937278, at *7 (Tex. App.—San Antonio Aug. 21, 2019, pet. denied) (mem. op.) (stating that a parent's failure to obtain and maintain stable housing and employment through the eighteen-month pendency of the case subjected her children to a life of uncertainty and instability, endangering their physical and emotional well-being).

Hayes further testified that Mother had not completed any of her required services by the time of trial. Mother testified that she completed counseling, but Hayes testified that Mother

attempted counseling three times but was discharged unsuccessfully each time for nonparticipation. Later in her testimony, Mother asked that the trial court continue the case for two months so that she could seek counseling. Hayes also testified that Mother did not complete her family-violence classes and explained that the Department had decided to "let that go" until Mother finished drug treatment and counseling. "A fact finder may infer from a parent's failure to take the initiative to complete the services required to regain possession of h[er] child that [s]he does not have the ability to motivate h[er]self to seek out available resources needed now or in the future." *In re J.M.T.*, 519 S.W.3d 258, 270 (Tex. App.—Houston [1st Dist.] 2017, pet. denied); *see also* TEX. FAM. CODE ANN. § 263.307(b)(10), (11) (providing courts may consider willingness and ability of the child's family to seek out, accept, and complete counseling services and willingness and ability of the child's family to effect positive environmental and personal changes within a reasonable period of time); *Holley*, 544 S.W.2d at 371–72 (listing parental abilities of an individual seeking custody and programs available to assist the individual as a best-interest factor).

Hayes testified that Mother visited her children in the Department's care from November 2018 until February 2019, and that her visits were appropriate until the last one. According to Hayes, on February 6, 2019, Mother demanded to take the children out of the shelter on her visit. Hayes testified that Mother appeared "under the influence." Hayes cancelled the visit, but Mother would not leave the shelter. The police arrested Mother for trespassing, but the charges were later dropped. Hayes testified that the eldest child, Alex, was angry at his mother because she had ruined the visit for his siblings. The trial court ended Mother's visitations based on this incident, and the Department did not resume visitation because Mother failed to attend drug testing and counseling. *See In re F.M.A.*, No. 04-16-00318-CV, 2016 WL 4379456, at *3 (Tex. App.—San Antonio Aug. 17, 2016, pet. denied) (mem. op.) (noting that a history of drug use and an inability to maintain a lifestyle free from arrests is relevant to a trial court's best-interest determination).

At the time of trial, the children were living with a maternal aunt, who intended to adopt the children. According to Hayes, the children were happy and thriving. The children were well-bonded to the aunt, and she was able to take care of their physical and emotional needs. Hayes specified that the aunt is affectionate with the children, takes them shopping, prepares their meals, and makes sure their medical and dental needs are met. *See In re G.V.*, No. 14–02–00604–CV, 2003 WL 21230176, at \*5 (Tex. App.—Houston [14th Dist.] May 29, 2003, pet. denied) (mem. op.) (noting the stability that a proposed placement promises "weigh[s] heavily in the court's finding that termination is in the best interest" of a child).

After viewing all of the evidence in the light most favorable to the best-interest finding, we conclude that the trial court could have formed a firm belief or conviction that termination of Mother's parental rights was in the children's best interest. *See In re J.F.C.*, 96 S.W.3d at 266. We further conclude that any disputed evidence, viewed in light of the entire record, could have been reconciled in favor of the trial court's best-interest finding or was not so significant that the trial court could not reasonably have formed a firm belief or conviction that termination was in the children's best interest. *See id.* Therefore, we hold the evidence is legally and factually sufficient to support the trial court's best-interest finding. *See* TEX. FAM. CODE ANN. § 161.001(b)(2).

## CONCLUSION

We affirm the trial court's order.

Rebeca C. Martinez, Justice